898 F.2d 401
 58 USLW 2568
 Steven SHUBERT, Appellant in No. 89-1671
v.
METROPHONE, INC. and Awacs, Inc., d/b/a Metrophone and all
subsidiaries, affiliates, divisions and parent entities.
Gerard A. MARGIOTTI, M.D., Appellant in No. 89-1801
v.
BELL ATLANTIC CORP. d/b/a Bell Atlantic Mobile Systems, and
all subsidiaries, affiliates, divisions and parent entities.
 Nos. 89-1671, 89-1801.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 5, 1990.
Decided March 20, 1990.
 
 Ronald Jay Smolow (argued), Smolow & Landis, Trevose, Pa., Steven P. Burkett, Krimsky, Levy, Angstreich, Finney, Mann & Burkett, Philadelphia, Pa., for appellants.
 John G. Harkins, Jr. (argued), Ellen Kittredge Scott, Jody Marcus, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees Metrophone, Inc. and Awacs, Inc.
 Nancy J. Gellman (argued), Conrad & O'Brien, Philadelphia, Pa., for appellee Bell Atlantic Corp.
 Before GREENBERG, SCIRICA and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 By this opinion we dispose of consolidated appeals from orders dismissing two actions brought in the United States District Court for the Eastern District of Pennsylvania on behalf of subscribers to cellular phone service systems.[1] The appellants, Steven Shubert and Gerard A. Margiotti, who are such subscribers, alleged that their service providers, the appellees, Metrophone Inc. and Bell Atlantic Corp., intentionally divulged the contents of their cellular mobile phone communications, as well as those of other subscribers, without consent, in violation of 18 U.S.C. Sec. 2511(3), a section of the Electronic Communications Privacy Act of 1986, Pub.L. No. 99-508, 100 Stat. 1848 (1986). Accordingly, the appellants sought civil damages for themselves and on behalf of the classes of subscribers they have sought to represent pursuant to 18 U.S.C. Sec. 2520.[2] In addition, appellants asserted pendent state claims.
 
 
 2
 The district court by an order of July 13, 1989, dismissed Shubert's Privacy Act cause of action against Metrophone pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted and declined to exercise jurisdiction over the pendent state claims which were thus dismissed without prejudice.[3] By an order dated September 5, 1989, the district court similiarly dismissed Margiotti's Privacy Act claim against Bell as well as his pendent state claims.[4] Shubert and Margiotti appeal from these orders. The district court had jurisdiction under 28 U.S.C. Sec. 1331 and we have jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 3
 Appellants alleged that the contents of their cellular communications had been divulged by appellees in transmitting the communications by a method susceptible to interception by third parties in violation of 18 U.S.C. Sec. 2511(3)(a) which recites:[5]Except as provided in paragraph (b) of this subsection, a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient.[6]
 
 
 4
 In dismissing Shubert's complaint, the court held that while the Privacy Act proscribes the intentional disclosure of communications, it does not prohibit the mere facilitation of cellular transmissions. Thus, it reasoned that a violation of the Privacy Act must be predicated upon a showing that a person had either intercepted communications "or knew or had reason to know that the information to be disclosed was obtained through an interception." The court pointed out that Shubert had not alleged that Metrophone had improperly acquired the contents of his communications. It further held that the Privacy Act does not impose a general duty upon a cellular service provider to encrypt or otherwise render its transmissions incapable of interception.
 
 
 5
 Following the dismissal of Shubert's complaint, Margiotti amended his complaint against Bell to allege that the disclosures which allegedly resulted from the transmission of his cellular calls in a form capable of interception, were neither necessary nor incidental to cellular transmissions. He further alleged that the disclosures of his communications were not authorized pursuant to exceptions to the Privacy Act in 18 U.S.C. Sec. 2511(2)(a) or Sec. (3)(b). The court, however, on Bell's motion to dismiss indicated that the decision in Shubert's case had not turned on the necessary or incidental nature of the alleged divulgence and reiterated that the act of transmitting communications in a manner capable of interception does not, in and of itself, divulge the contents of such communications in violation of section 2511(3). The court reasoned that any eavesdropping third party would have to act intentionally and independently of the communication provider in order to listen in on the communications, and it is that eavesdropping which is illegal.
 
 
 6
 Inasmuch as the district court dismissed these actions because it concluded that appellants did not allege judicially cognizable claims under the Privacy Act, our review is plenary. Government Employees Ins. Co. v. Benton, 859 F.2d 1147, 1149 (3d Cir.1988). Of course, as these cases were dismissed under Fed.R.Civ.P. 12(b)(6), we must construe all factual allegations in the complaints most favorably to the appellants and affirm the dismissals only if it appears certain that no relief could be granted to them under any set of facts which could be proven. D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir.1984).
 
 
 7
 Appellants raise a number of arguments on appeal, but all ultimately depend upon the proposition that the transmission of cellular communications without scrambling or encrypting and by a method permitting their interception is an intentional divulgence of the contents of the communications. Further, they contend that scrambling or encrypting techniques are available which at least would make it more difficult to intercept cellular transmissions and we accept that allegation in deciding these appeals.
 
 
 8
 The Privacy Act amended Title III of the Omnibus Crime Control and Safe Streets Act of 1968, which has come to be known as the Wiretap Act. See 18 U.S.C. Sec. 2510 et seq. Section 2511 of the Wiretap Act was extensively modified by the Privacy Act which, as germane to this appeal, added section 2511(3)(a) above quoted, relating to intentional disclosures by communication service providers, and amended 18 U.S.C. Sec. 2511(1), to read in relevant part:
 
 
 9
 (1) Except as otherwise specifically provided in this chapter any person who--
 
 
 10
 (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication;
 
 
 11
 (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication....;
 
 
 12
 (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of wire, oral, or electronic communication in violation of this subsection;
 
 
 13
 (d) intentionally uses, or endeavors to use, the contents of any wire, oral, electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
 
 
 14
 shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).
 
 
 15
 It is apparent, therefore, that the Privacy Act was intended to protect wire, oral and electronic communications by prohibiting their interception and disclosure through restrictions on service providers and the public as a whole. While the Act does not make specific reference to cellular communications, the intention of Congress to include such communications within the Privacy Act's protection is apparent from the legislative history and is not disputed by the appellees.
 
 
 16
 The impetus to the enactment of the Privacy Act was Congress' awareness and increasing concern over the impact advancing communication technology was having on personal privacy. The Senate recognized that the:
 
 
 17
 tremendous advances in telecommunications and computer technologies have carried with them comparable technological advances in surveillance devices and techniques. Electronic hardware making it possible for overzealous law enforcement agencies, industrial spies and private parties to intercept the personal or proprietary communications of others are readily available in the American market today.
 
 
 18
 S.Rep. No. 99-541, 99th Cong., 2nd Sess., at 3, reprinted in, 1986 U.S.Code Cong. & Admin.News. 3555, 3557 [hereinafter Senate Report].
 
 
 19
 The ready availability of such technology was seen as posing a threat to rights of privacy. As the House Committee report on the Privacy Act states:
 
 
 20
 .... despite efforts by both Congress and the courts, legal protection against the unreasonable use of newer surveillance techniques has not kept pace with technology.
 
 
 21
 House Report No. 647, 99th Cong., 2d Sess. at 18 (June 19, 1986) [hereinafter House Report]. The Senate Committee Report on the Privacy Act forcefully expresses these same concerns:
 
 
 22
 [m]ost importantly, the law must advance with the technology to ensure the continued vitality of the fourth amendment. Privacy cannot be left to depend solely on physical protection, or it will gradually erode as technology advances. Congress must act to protect the privacy of our citizens. If we do not, we will promote the gradual erosion of this precious right.
 
 
 23
 Senate Report, 1986 U.S.Code Cong. & Admin.News at 3559.
 
 
 24
 Nowhere was this concern greater than with cellular communication technology. As the House Report at 31 states:
 
 
 25
 [e]xisting law, which prohibits interception of wire communications or oral communications, was enacted prior to the development of cellular telecommunications and does not provide adequate privacy protection to conversations transmitted over a cellular system.
 
 
 26
 Congress was aware that cellular transmissions were vulnerable to interception:
 
 
 27
 [c]ellular telephone calls can be intercepted by either sophisticated scanners designed for that purpose, or by regular radio scanners modified to intercept cellular calls.
 
 
 28
 House Report at 20; Senate Report, 1986 U.S.Code Cong. & Admin.News at 3563.
 
 Congress thus considered that the:
 
 29
 .... availability of this technology poses a troubling conflict between the technology of surveillance and new techniques of communication using radio. Interception of cellular calls is illegal under current federal law.... Notwithstanding these legal proscriptions there remains a real life conflict as interception technology catches up with communications development. The resolution of these competing interests was fully considered by the Committee.
 
 
 30
 House Report at 20-21 (emphasis supplied).
 
 
 31
 Accordingly, Congress, through the Privacy Act amendments to section 2510(1), the definitional section of the Wiretap Act, intended to:
 
 
 32
 make[ ] clear that cellular communications--whether they are between two cellular telephones or between a cellular telephone and a 'land line' telephone--are included in the definition of 'wire communications' and are covered by the statute.
 
 
 33
 Senate Report, 1986 U.S.Code Cong. & Admin.News at 3565.
 
 
 34
 A similar intent is evidenced in the House Report which states:
 
 
 35
 ... that cellular communications be included within the term 'electronic communication'.... [t]hat such communication not be considered 'readily accessible to the general public' at any time subsequent to the date of enactment....
 
 
 36
 House Report at 32.
 
 
 37
 Thus, it is clear that Congress intended to eliminate illegal interception with the expectation that the surveillance technology industry would show restraint so that:
 
 
 38
 the future design and manufacture of scanners will take into account the privacy protection accorded cellular telephony [sic] in this legislation.
 
 
 39
 Id.
 
 
 40
 Given the legislative history of the Privacy Act, appellants' reading of section 2511(3)(a) as a general prohibition against the transmission of cellular communications in a form capable of interception, is untenable. Congress was well aware of the vulnerability of cellular transmissions when it enacted Sec. 2511(3)(a) which prohibits a communication service provider from intentionally divulging the contents of a communication while in the transmission of that service. Yet it did not expressly provide that the mere act of the cellular transmission of a communication without scrambling or encryption was an intentional divulgence of a communication's contents.
 
 
 41
 Our conclusion is buttressed by the circumstance that the Privacy Act amended sections 2510 and 2511 of the Wiretap Act to change the required mens rea for a violation from "willful to intentional". Pub.L. No. 99-508, Sec. 101(f), 100 Stat. 1853 (1986); Senate Report, 1986 Code Cong. & Admin.News at 3577. This amendment was intended:
 
 
 42
 to underscore that inadvertent interceptions are not crimes under the Electronic Communications Privacy Act.
 
 
 43
 As used in the Electronic Communications Privacy Act, the term 'intentional' is narrower than the dictionary definition of 'intentional.' 'Intentional' means more than that one voluntarily engaged in conduct or caused a result. Such conduct or the causing of the result must have been the person's conscious objective. An 'intentional' state of mind means that one's state of mind is intentional as to one's conduct or the result of one's conduct if such conduct or result is one's conscious objective. The intentional state of mind is applicable only to conduct and results. Since one has no control over the existence of circumstances, one cannot 'intend' them.
 
 
 44
 Id. [Emphasis supplied.]
 
 
 45
 Clearly, Congress could not have intended that the transmission of a cellular signal to an intended recipient be considered an intentional divulgence based merely on the circumstance that technology exists which could make interception more difficult or not possible.
 
 
 46
 Finally, we point out that when Senator Leahy introduced the Privacy Act he indicated that:
 
 
 47
 [i]t is no solution to say that anybody concerned about the privacy of these communications can pay for security by paying for encryption.
 
 
 48
 Encryption can be broken. But more importantly, the law must protect private communications from interception by an eavesdropper, whether the eavesdropper is a corporate spy, a police officer without probable cause, or just a plain snoop.
 
 
 49
 131 Cong.Rec.S. 11,796 (Sept. 19, 1985).
 
 
 50
 It is consistent with the foregoing statement to conclude that Congress did not require scrambling or encryption. Instead, it protected the privacy of cellular, as well as other communications, by prohibiting their intentional interception or divulgence by any person, including divulgence by service providers while in transmission.
 
 
 51
 In the end the issue before us is not at all difficult. Under the Privacy Act, 18 U.S.C. Sec. 2511(3)(a), it is unlawful for the communications provider to "intentionally divulge the contents" of a communication while in transmission except to the intended recipient. This section means what it says and we cannot equate transmission to divulgence, even though the transmission may be readily intercepted. Inasmuch as the appellants are obviously not satisfied with the Privacy Act as it is written their remedy is with Congress and not this court. The orders of July 13, 1989, and September 5, 1989, will be affirmed.
 
 
 
 [1]
 The cases in the district court were Shubert v. Metrophone, Inc., Civ. No. 89-1966, 1989 WL 79349 (E.D.Pa. July 13, 1989) and Margiotti v. Bell Atlantic Corp., Civ. No. 89-1967, 1989 WL 102928 (E.D.Pa. Sept. 5, 1989)
 
 
 [2]
 Section 2520 states:
 (a) In general.--Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.
 (b) Relief.--In an action under this section, appropriate relief includes--
 (1) such preliminary and other equitable or declaratory relief as may be appropriate;
 (2) damages under subsection (c) and punitive damages in appropriate cases; and
 (3) a reasonable attorney's fee and other litigation costs reasonably incurred.
 
 
 [3]
 Shubert alleged state claims for breach of contract, common law fraud, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, invasion of privacy, and violation of the Pennsylvania Wiretapping and Electronic Surveillance Act
 
 
 [4]
 Margiotti alleged the same state causes of actions as did Shubert. Neither appellant suggests that if his Privacy Act claim was properly dismissed the district court erred in dismissing his pendent state claims
 
 
 [5]
 Cellular telephone services have been described as follows
 In 1981 the Federal Communications Commission approved the use of cellular telephone services. This technology uses both radio transmission and wire to make 'portable' telephone service available in a car, a briefcase, or in rural areas not reached by telephone wire.
 In a cellular radiotelephone system, large service areas are divided into honeycomb-shaped segments or 'cells'--each of which is equipped with a lower-power transmitter or base station which can receive and radiate messages within its parameters. When a caller dials a number on a cellular telephone, a transceiver sends signals over the air on a radio frequency to a cell site. From there the signal travels over phone line or a microwave to a computerized mobile telephone switching office (MTSO) or station. The MTSO automatically and inaudibly switches the conversation from one base station and one frequency to another as the portable telephone, typically in a motor vehicle, moves from cell to cell.
 S.Rep. No. 99-541, 99th Cong., 2d Sess., at 9, reprinted at 1986 U.S.Code Cong. & Admin.News 3555, 3563.
 
 
 [6]
 Appellants' complaints cited section 2511 in the counts under the Privacy Act rather than section 2511(3)(a) in particular. It is clear, however, that their allegations could not possibly support claims of violation under section 2511(1)