**GENERAL ELECTRIC COMPANY, Derivatively by J.H. LEVIT**

v.

**Silas S. CATHCART; Lawrence E. Fouraker; John F. Welch; H.B. Atwater; Edward E. Hood, Jr.; Richard T. Baker; Gertrude G. Michelson; Lawrence A. Bossidy; C.C. Dickey, Jr.; David C. Jones; B.S. Preiskel; W.B. Wriston; Andrew C. Sigler; Robert E. Mercer; Lewis T. Preston; F.H. Rhodes; H.H. Henley, Jr.; Henry L. Hillman; General Electric Company;**

**J.H. Levit, in his own right, and derivatively on behalf of the General Electric Company, Appellant.**

No. 92–1356.

United States Court of Appeals, Third Circuit.

Argued Oct. 26, 1992.

Decided Dec. 3, 1992.

James R. Malone, Jr. (argued), Mark C. Rifkin, Richard D. Greenfield, C. Oliver Burt, III, Greenfield and Chimicles, Haverford, Pa., for appellant.

Lewis B. Kaden (argued), Lawrence J. Portnoy, Davis, Polk & Wardwell, New York City, for appellees except General Elec. Co.

J. Clayton Undercoffler, Michael R. Lastowski, William M. Janssen, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for appellee General Elec. Co.

Before GREENBERG, NYGAARD, and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I. FACTUAL AND PROCEDURAL HISTORY

J.H. Levit appeals in this shareholder derivative action from a district court order of March 30, 1992, dismissing his federal securities claims pursuant to Fed.R.Civ.P. 12(b)(6), and dismissing his state claims for lack of supplemental jurisdiction. We will affirm the district court's order with respect to all the claims except one, the appeal from which we will dismiss as moot.[1]

Levit, a shareholder of General Electric Company, filed this suit on March 27, 1991, seeking damages and equitable relief against the individual appellees, 18 General Electric directors, some of whom were also senior officers of the company, to redress what he calls "ongoing rampant lawlessness that has pervaded the Company." Brief at 3. Count I of the complaint alleges violations of Section 14(a) of the Securi-

---

1. We have jurisdiction pursuant to 28 U.S.C. § 1291. The district court had subject matter jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

ties Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rule 14a–9 of the Securities and Exchange Commission promulgated thereunder, 17 C.F.R. § 240.14a–9. In this count, Levit claims that the appellees disseminated false and misleading proxy statements to shareholders from 1987–1991, by failing to disclose criminal activity and misconduct of company employees. Counts II and III allege supplemental state law claims of breach of fiduciary duty in connection with the same allegations.[2]

Levit organized his complaint around five categories of alleged corporate misconduct. The first category concerns several incidents in which the appellees purportedly allowed General Electric to engage in fraudulent billing practices with respect to certain defense contracts. In particular, the complaint describes how General Electric and two employees in its Management and Technical Services subsidiary were indicted in November 1988, and convicted in February 1991, for charges arising from General Electric's defrauding the United States government by inflating costs in a $21 million computer contract with the United States Army. As a result a $10 million fine was imposed on General Electric. The complaint also recounts that in 1985 General Electric pled guilty to charges of illegally claiming cost overruns on Minuteman missile contracts and was fined over $1 million. The complaint further avers that a March 17, 1991 court proceeding in Israel revealed that a senior executive in General Electric's General Aircraft division conspired with an Israeli general to divert more than $10 million from military engine contracts between General Electric and the Israeli Air Force, and that this conspiracy triggered governmental investigations of the executive and General Electric.[3] Levit claims that General Electric's conviction on any charges stemming from these incidents, when coupled with its conviction in the Management and Technical Services affair, will cause it to be debarred from government contracts for up to three years, subject it to fines and penalties, and oblige it to make restitution.

The second category of alleged misconduct involves the appellees' supposed failure to supervise General Electric's role in nuclear power plant construction. Levit alleges that the appellees permitted construction of nuclear containment vessels with serious design and safety flaws, potentially subjecting General Electric to liability for hundreds of millions of dollars. The complaint asserts that the Washington Public Power Supply System and the Long Island Lighting Company had brought actions against General Electric as a result of these failures.

The third category concerns the appellees' alleged mismanagement of General Electric's Financial Services subsidiary by permitting reckless investments in real estate and leveraged buy-outs, thereby making General Electric vulnerable to adverse economic developments. In addition, Levit charges that General Electric's falsely optimistic statements regarding that subsidiary have exposed the company to liability to investors for federal securities laws violations and for common law claims predicated on fraud and negligent misrepresentation.

The fourth category relates to Levit's claim that the appellees' condoning or ignoring General Electric's illegal dumping of approximately 500,000 pounds of polychlorinated biphenyls into the Hudson River ultimately could cost General Electric $270 million for clean-up costs.

Finally, Levit charges that the appellees' failure to supervise another General Electric subsidiary, Yokogawa Medical Systems,[4] led to the arrests of two employees

2. In addition to the present action, Levit asserted claims against the directors and officers of General Electric in a related case recently dismissed by the United States District Court for the Eastern District of Pennsylvania. *See General Electric Co., derivatively by Levit et al. v. Rowe et al.,* No. 89–7644 (WD), 1992 WL 277997, 1992 U.S.Dist. LEXIS 15036 (E.D.Pa. Sept. 30, 1992).

3. It is not clear whether Levit meant both United States and Israeli investigations.

4. According to the complaint, General Electric owns 75% of Yokogawa.

on February 20, 1992, for bribing professors in Japan to buy General Electric medical equipment. Levit asserts that as a consequence the Japanese Ministry of Education stopped business transactions between all Japanese universities and university hospitals and Yokogawa Medical Systems.

Notwithstanding the broad allegations of his complaint, Levit does not set forth specific facts explaining how a particular appellee participated in or was directly responsible for the misconduct alleged, though he does accuse them collectively of wrongdoing, poorly supervising the company, and attempting to cover up the misconduct.[5] In count I of the complaint, Levit claims that the appellees violated Section 14(a) by omitting reference to the alleged misconduct in two sets of proxy statements: (1) the 1987–1991 proxy solicitations on behalf of their re-election as board members and (2) certain proxy materials relating to so-called "raincoat provisions," corporate governance rules designed to protect directors and officers from personal liability. Levit's allegations involve two raincoat provisions, *i.e.*, the 1987 proxy solicitation seeking shareholder approval for an amendment to General Electric's by-laws to provide for directors' and officers' indemnification from certain liabilities and the 1988 proxy solicitation seeking shareholder approval for an amendment of the certificate of incorporation to limit directors' liability.[6]

According to the complaint, the appellees deliberately omitted any information about their alleged misconduct from the proxy materials to ensure their re-election as directors and the passage of the raincoat provisions. Levit concludes that the information withheld was material to both sets of proxy statements, as it reflected on the appellees' ability to manage the company and their potential liability to General Electric's shareholders. He speculates that if the pertinent facts had been disclosed to the shareholders, they never would have voted for the appellees' re-election as directors or for the raincoat provisions. Accordingly, Levit seeks monetary damages and the invalidation of the 1987–1991 directors' elections and the raincoat provisions.

The appellees moved to dismiss the complaint for failure to state a claim upon which relief could be granted, arguing that Levit's allegations only charged them with failing to disclose mismanagement and potential litigation, matters not required to be revealed in proxy solicitations.[7] The district court granted the appellees' motion.

Viewing Levit's Section 14(a) allegations in what it considered the most favorable light, the district court read the complaint as alleging a claim for money damages in relation to the appellees' re-election as directors, and claims for equitable relief concerning the appellees' re-election and the

5. We are not suggesting that the allegations of the complaint would have been insufficient to survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6) if addressed to the state law counts, as that matter is not before us.

6. The 1987 amendment to the by-laws provided indemnification to General Electric's officers and directors for any liability to the company unless the officer or director acted in bad faith, was deliberately dishonest, or gained an unjustified personal financial benefit. Under the 1988 amendment to the certificate of incorporation, the directors could not be liable to the company for their actions unless one of the three conditions was present.

7. The appellees also moved to dismiss all claims with respect to the Hudson River, Israel, and Japan incidents pursuant to Fed.R.Civ.P. 23.1,

asserting that Levit failed to make a pre-litigation demand regarding them on the board of directors. Furthermore they moved to dismiss the claims concerning the nuclear containment and the Financial Services matters on the ground that Levit had not allowed the directors sufficient time to consider the pre-litigation demands with respect to them. In addition, the appellees moved to dismiss all claims arising from the 1987 and 1988 proxy statements, as well as certain of the claims relating to the 1989 and 1990 proxy statements, as time-barred. Finally, the appellees moved to dismiss or stay the defense contracting allegations on the ground that they are duplicative of claims asserted in the litigation we described in footnote 2. But the district court in granting the motion to dismiss reached only the appellees' arguments that Levit had failed to state a claim for which relief can be granted under Section 14(a).

raincoat provisions.[8] The court dismissed the Section 14(a) claim for money damages on the ground that Levit failed to show "transaction causation"—*i.e.*, the court found that the causal connection between the misleading proxy statements and the alleged misconduct was too attenuated to state a claim for damages under Section 14(a). In so concluding, the court relied on cases holding that unless the challenged proxy materials actually cause the corporate action that results in a financial loss, there cannot be a recovery of money damages under Section 14(a).

But the district court found Levit's assertion that the proxy materials were misleading- sufficient to satisfy the transaction causation requirement with respect to the claim for equitable relief arising from the appellees' re-election, as Levit was attacking the elections themselves rather than the underlying transactions. Nevertheless, the district court found the undisclosed allegations immaterial, because they involved only purported instances of mismanagement or waste of corporate assets and did not assert any self-dealing by the appellees. In reaching this result, the district court relied on *Gaines v. Haughton*, 645 F.2d 761, 776–77 (9th Cir.1981), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982), *and overruled on other grounds, In re Complaint of McLinn*, 739 F.2d 1395 (9th Cir.1984), and *Galef v. Alexander*, 615 F.2d 51 (2d Cir.1980), which held that, absent allegations of self-dealing, corporate directors have no duty to disclose mismanagement or breach of fiduciary duty in proxy materials.[9]

The district court also dismissed Levit's Section 14(a) equitable challenge to the raincoat provisions. The court observed that the case law and SEC guidelines under Section 14(a) do not oblige directors to speculate as to future liability and thus the appellees were not required to disclose the potential for future litigation arising from

their alleged misconduct. Rather, the appellees were required to disclose only pending, non-routine litigation. Because Levit's complaint did not allege that there was pending, or even threatened, litigation against the appellees at the time General Electric distributed the raincoat proxy materials, the court found that Levit's claim did not satisfy Section 14(a)'s materiality requirement. Finally, the court declined to retain supplemental jurisdiction over the two state law counts which it thus dismissed.

We will affirm the dismissal of the monetary claim in relation to appellees' re-election as directors for the same reasons stated by the district court. We decline to revisit on the merits Levit's equitable claim concerning their re-election, as this claim is moot in light of the subsequent directors' election held in April 1992. Finally, we will affirm the district court's dismissal of the raincoat provision claims as we conclude that the appellees did not have a duty to disclose their potential liability in the absence of pending or threatened litigation against them during the period when the shareholders adopted the provisions.

## II. STANDARD OF REVIEW

■■■ We exercise plenary review of the district court's grant of the Rule 12(b)(6) motion. *Ditri v. Coldwell Banker Residential·Affiliates, Inc.*, 954 F.2d 869, 871 (3d Cir.1992). In that review, we accept all factual allegations in the complaint and all reasonable inferences that can be drawn from it in the light most favorable to Levit. *See Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988). Accordingly we may "affirm the dismissal[ ] only if it is certain that no relief could be granted ... under any set of facts which could be proven." *Shubert v. Metrophone, Inc.*, 898 F.2d 401, 403 (3d Cir.1990).

---

8. Although it was not clear from the complaint whether Levit was actually advancing each of these arguments, the district court entertained what it thought were all possible claims in an attempt to view Levit's claim most favorably.

9. The *Galef* ruling is not completely clear on this point, but the court in *Gaines* understood *Galef* to draw the distinction between self-dealing and mismanagement. *See Gaines*, 645 F.2d at 777–78.

## III. DISCUSSION

### 1. *Statutory Background*

Under Section 14(a) of the Securities Exchange Act of 1934, it is unlawful to solicit proxies in contravention of "such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a).[10] Rule 14a–9, 17 C.F.R. § 240.14a–9, promulgated by the SEC pursuant to Section 14(a), provides, in pertinent part:

> No solicitation subject to this regulation shall be made by means of any proxy statement ... which, at the time ... it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

In *J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964), the Supreme Court explained: "The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation."

There is a private right of action under Section 14(a). *J.I. Case Co. v. Borak*, 377 U.S. at 430–31, 84 S.Ct. at 1559. To prevail on a Section 14(a) claim, a plaintiff must show that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was "an essential link in the accomplishment of the transaction." *See Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970); *Ash v. GAF Corp.*, 723 F.2d 1090, 1092–93 (3d Cir.1983). The

Court has explained that an omitted fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).[11] However, the Court has cautioned:

> [T]he disclosure policy embodied in the proxy regulations is not without limit.... Some information is of such dubious significance that insistence on its disclosure may accomplish more harm than good ... [I]f the standard of materiality is unnecessarily low, not only may the corporation and its management be subjected to liability for insignificant omissions or misstatements, but also management's fear of exposing itself to substantial liability may cause it to simply bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking.

*Id.* at 448–49; 96 S.Ct. at 2132.

The Court has stated that the determination of materiality concerns "a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts." *Id.* at 450, 96 S.Ct. at 2132–33. Thus, only if "the disclosures or omissions are so clearly unimportant that reasonable minds could not differ should the ultimate issue of materiality be decided as a matter of law." *In re Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 641 (3d Cir.1989). With these general principles in mind, we address Levit's Section 14(a) claims in the order that the district court ruled upon them.

### 2. *Section 14(a) Monetary Claim in Regard to the Election of Directors*

Levit's first contention is that the district court erred in concluding that he

---

**10.** Section 14(a) provides:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or

consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

**11.** It should be noted that the standard of materiality in a Section 14(a) case is identical to that in a Section 10(b) case. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 983–84, 99 L.Ed.2d 194 (1988).

cannot show transaction causation with respect to the appellees' re-election. More specifically, Levit argues that the misleading proxy statements served as "an essential link" in the transactions which caused General Electric to lose money; the proxy statements allowed the appellees to retain their positions on the board, thus ensuring that they could continue to mismanage the company.

But as the district court observed, this is precisely the sort of claim that courts have repeatedly found insufficient to satisfy the transaction causation requirement. The pecuniary harm to General Electric that Levit alleges resulted from the appellees' purported mismanagement. Yet the mere fact that omissions in proxy materials, by permitting directors to win re-election, *indirectly* lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss. Rather, damages are recoverable under Section 14(a) only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and that transaction was the direct cause of the pecuniary injury for which recovery is sought.

Thus, the appellees' re-election as directors did not create any cognizable harm because the shareholders' votes did not authorize the transactions that caused the losses. *See, e.g., United Canso Oil & Gas Ltd. v. Catawba Corp.*, 566 F.Supp. 232, 237 (D.Conn.1983) (rejecting notion that purported "scheme" of mismanagement lasting 26 years and requiring directors'

elections to implement it, is a "transaction" needing shareholder approval); *see also In re General Tire and Rubber Co. Securities Litig.*, 726 F.2d 1075, 1082 (6th Cir. 1984); *Gaines v. Haughton*, 645 F.2d at 776–77; *Murray v. Hospital Corp. of America*, 682 F.Supp. 343, 348–49 (M.D.Tenn.1988); *Issen v. GSC Enters., Inc.*, 522 F.Supp. 390, 395 (N.D.Ill.1981); *In re Tenneco Sec. Litig.*, 449 F.Supp. 528, 531 (S.D.Tex.1978); *Limmer v. GTE Corp.*, [1977–78 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,111, 1977 WL 1029 (S.D.N.Y. 1977); *Levy v. Johnson*, [1976–77 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,899, 1977 WL 931 (S.D.N.Y.1977). Accordingly, Levit's complaint fails to "establish the necessary causal nexus between the underlying challenged activity," in this case the appellees' re-election, "and the proxy process." *Murray v. Hospital Corp. of America*, 682 F.Supp. at 349. Levit's monetary claim, therefore, was properly dismissed.[12]

### 3. Section 14(a) Equitable Claim in Regard to the Election of Directors

Levit next argues that the district court improperly dismissed his equitable claim challenging the appellees' re-election as directors. He contends that the Supreme Court's holding in *Virginia Bankshares, Inc. v. Sandberg*, —— U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), and our holding in *In re Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d at 637–41, essentially rejected the proposition that allegations of mere mismanagement need not be disclosed in the absence of self-dealing.[13] Levit fur-

---

**12.** The district court considered Levit's Section 14(a) claim for monetary damages only with respect to the appellees' re-election as directors. We are satisfied, however, that he also sought damages for the adoption of the raincoat provisions and we believe that there might be transaction causation with respect to those provisions. We need not, however, dwell on the point because, as we explain below, the appellees cannot be liable for the adoption of these provisions, as the proxy materials did not omit mention of actual or threatened litigation against them. Furthermore, we observe that there is nothing in the complaint to support a conclusion that the raincoat provisions damaged either the shareholders or General Electric itself, as Levit does not claim that the appellees

have been indemnified by General Electric or exonerated from liability by them.

**13.** Levit's argument finds support in two district court opinions within this circuit. *See In re Meridian Sec. Litig.*, 772 F.Supp. 223, 228 (E.D.Pa.1991) (the "argument, that there is no duty to confess mismanagement in proxy materials, must fail after *Virginia Bankshares*"); *Westinghouse Elec. Corp. v. Franklin*, 789 F.Supp. 1313, 1320 (D.N.J.1992) (citing *Craftmatic*, court holds that "allegations of failure to disclose illegal and deceptive practices will survive a motion to dismiss" a Section 14(a) claim). In light of our disposition of the re-election issue on mootness grounds, we express neither

ther maintains that the cases categorizing corporate wrongdoing as either mismanagement or self-dealing draw too narrow an interpretation of materiality as they fail to account for other forms of misconduct—such as the activity alleged in his complaint—falling between those two extremes.

We cannot address Levit's argument on this point, as this equitable claim is moot. "Generally, an appeal will be dismissed as moot when events occur during [its] pendency ... which prevent the appellate court from granting any effective relief." *In re Cantwell*, 639 F.2d 1050, 1053–54 (3d Cir.1981). We cannot grant effective relief here because the terms of the directors elected in 1987–1991 have expired and there was a new election for directors on April 22, 1992, which Levit does not challenge, one month after the district court dismissed Levit's complaint.[14] Thus, a court only could grant him equitable relief with respect to the expired terms by doing the impossible: enjoining the directors from serving expired terms.

Other courts have found that similar challenges to the election of directors for lapsed terms are moot. *Palumbo v. Deposit Bank*, 758 F.2d 113 (3d Cir.1985), is instructive. Several months after the plaintiff in that case brought suit to invalidate the election of the directors of Deposit Bank, it merged with a holding company which re-elected the directors. *Id.* at 115. As a result, the district court found the equitable claim challenging the prior elections moot and we affirmed. *Id.* at 116. *See also Lee v. Schmidt–Wenzel*, 766 F.2d 1387, 1389 (9th Cir.1985) (declaratory claim challenging method by which vacancies on board of directors were filled mooted by later shareholders' meeting which elected a new board of directors); *Maldonado v. Flynn*, 597 F.2d 789, 797 n. 10 (2d Cir.1979)

("The terms of those elected in 1975 have expired, rendering moot the question of the validity of the election...."); *Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945, 955–56 (S.D.N.Y.1983), *aff'd*, 730 F.2d 910 (2d Cir.1984) (in absence of possibility of monetary damages, claim regarding expired terms dismissed as moot); *Smillie v. Park Chemical Co.*, 466 F.Supp. 572, 575 (E.D.Mich.1979) (claim seeking injunctive relief concerning corporate elections of 1973 and 1974 moot because officers had already completed their terms); *Kamerman v. Pakco Companies, Inc.*, [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,318, 93066, 1978 WL 1055 (S.D.N.Y. 1978) ("Since ... the Court, under the aegis of Section 14, could not fashion relief other than to void the past elections, all of which are now moot, ... the action, even if successful, would prove to be futile."); *Herman v. Beretta*, 26 Fed.R.Serv.2d (Callaghan) 1237 (S.D.N.Y.1978) ("courts will not seek to perform an act that is an obvious nullity: voiding the election of directors whose terms have already expired"); *cf. Murray v. Silberstein*, 882 F.2d 61, 64–65 (3d Cir.1989) (former bail commissioner's claim seeking reinstatement to office mooted by fact that his term had expired during pendency of appeal).

We recognize that in some cases courts have distinguished between declaratory and injunctive relief, holding that where only declaratory relief is requested, a new election of directors moots the claim; but, "[w]here injunctive relief is sought to prevent a recurrence of proxy violations ... a claim arising out of a past election, even if the terms of the persons have expired, is not moot if there is a real threat of recurrence." *Wisconsin Real Estate Inv. Trust v. Weinstein*, 530 F.Supp. 1249, 1251 (E.D.Wis.1982), *rev'd on other grounds*, 712 F.2d 1095 (7th Cir.1983); *see also Seibert v. Sperry Rand Corp.*, 586 F.2d 949,

agreement nor disagreement with these cases. Furthermore, we need not discuss Levit's position derived from these cases in our disposition of the challenge to the raincoat provisions, because of our conclusion that only actual or threatened litigation against potential indemnities need be disclosed.

14. The appellees claim that Levit's allegations were disclosed in the 1992 proxy statements. Brief at 25 n. 22; 35 n. 30. Although there is no evidence in the record to verify this claim, we need not consider it as the parties agree that the election occurred and it has not been challenged.

951 (2d Cir.1978); *Westinghouse Elec. Corp. v. Franklin,* 789 F.Supp. 1313, 1316 (D.N.J.1992).

But these cases are distinguishable from this case. In addition to involving challenges to elections for completed terms, they included attacks on elections for terms which had not expired when the court ruled.[15] Furthermore, Levit has not pleaded any facts to support a conclusion that absent intervention by the court the alleged proxy violations will recur in future elections.[16] Indeed, it is difficult to see how Levit could in good faith seek prospective relief with respect to the proxy materials, inasmuch as he acknowledges that he has not challenged the April 22, 1992 election, and he thus makes no claim that the proxy materials for that election were not adequate. Accordingly, we will dismiss Levit's claims in regard to the appellees' elections as moot.

### 4. *Section 14(a) Equitable Claim in Regard to Raincoat Provisions*

■■■ Levit's final argument concerns the proxy statements soliciting approval for the raincoat provisions. He asserts that these proxy statements violated Section 14(a) by not disclosing that the appellees faced "possible future claims" in relation to the incidents described in the complaint, and thus prevented the shareholders from properly evaluating what they "were giving up" by adopting the raincoat provi-

sions. Brief at 27. The district court dismissed this claim, holding that there was no requirement to disclose the potential for future litigation.

Significantly, Levit's complaint does not allege that the appellees failed to disclose any actual litigation or threats of litigation against them in connection with the underlying allegations. Moreover, he conceded at oral argument before us that the 1987 and 1988 proxy statements disclosed two derivative suits against the appellees arising from the Minuteman incident. Furthermore, the complaint refers only to litigation against General Electric itself, namely the Management and Technical Services and Minuteman convictions and the Washington Public Power and Long Island Lighting civil suits. Therefore, inasmuch as Levit does not allege that the proxy statements failed to disclose pending or even threatened litigation against the appellees, he essentially argues that at the time of the 1987 and 1988 proxy statements the appellees should have predicted that certain claims might be asserted against them.

But such speculative disclosure is not required under Section 14(a). Wide authority establishes that while pending litigation may be material under certain circumstances, the mere possibility of litigation is not. *See, e.g., Prettner v. Aston,* 339 F.Supp. 273, 287 (D.Del.1972) (any statement "regarding the possibility of" litiga-

---

**15.** In *Seibert* the plaintiff sought to enjoin a director "from sitting on the Sperry Board unless and until he shall be elected thereto pursuant to a proper and lawful shareholder vote." In that circumstance, the Court of Appeals for the Second Circuit found that the dispute between the parties was "alive up to the final moment of appellate disposition." 586 F.2d at 951. Similarly, in *Wisconsin Real Estate* the plaintiffs supplemented their initial complaint, which challenged only the validity of an election to expired terms, with a pleading alleging that a subsequent election pursuant to which directors whose terms had not expired were elected had been tainted as well. Finally, *Westinghouse* involved a "claim that defendants disseminated false and misleading Proxy Statements in 1987 and *thereafter.*" 789 F.Supp. at 1316 (emphasis added). Although Levit complains of the proxy materials distributed in 1987 and "thereafter," in view of his failure to challenge the 1992 election, this open-ended plead-

ing cannot be the basis for prospective injunctive relief.

**16.** The complaint does indicate that Levit seeks injunctive relief with respect to appellees' "continued frustration of shareholder claims and the corporate suffrage process" but this generalized statement is not adequate to support injunctive relief. Although Levit seeks an injunction requiring General Electric to develop procedures to prevent "the reoccurrence of the wrongdoing alleged" in the complaint, we believe he intended this to relate to the substantive wrongdoing in the five categories of alleged corporate misconduct: In any event, even if he intended it to refer to proxy procedures, there would be no basis for future injunctive relief with respect to elections, as the April 22, 1992 election has not been challenged and Levit does not claim that the five categories of wrongdoing were not disclosed in connection with that election.

tion other than a pending or threatened legal proceeding "would have been wholly speculative and was not required"); *see also Bell Atlantic Corp. v. Bolger,* 771 F.Supp. 686, 687 (E.D.Pa.1991); *Goldsmith v. Rawl,* 755 F.Supp. 96 (S.D.N.Y.1991); *Fry v. Trump,* 681 F.Supp. 252, 261 (D.N.J. 1988); *Bertoglio v. Texas Int'l Co.,* 488 F.Supp. 630 (D.Del.1980); *Beatty v. Bright,* 318 F.Supp. 169 (S.D.Iowa 1970) (all concerning the disclosure of *pending* lawsuits); *cf. Pavlidis v. New England Patriots Football Club, Inc.,* 737 F.2d 1227, 1235 (1st Cir.1984) ("clairvoyance" not required of drafters of proxy statements); *Mills v. Esmark, Inc.,* 544 F.Supp. 1275, 1296 (N.D.Ill.1982) ("Defendants cannot be held to a standard of disclosure which requires consideration of all possible contingencies.").

Furthermore, while there may have been undisclosed litigation pending against General Electric in 1987 and 1988, a reasonable shareholder considering the raincoat provisions would not have been interested in its disclosure because the raincoat provisions are relevant only to officers' and directors' liability. Thus, when the raincoat provisions were adopted, reasonable shareholders would have wanted information only about pending or threatened litigation against the appellees.

This conclusion finds support in the SEC regulations relating to disclosure requirements for proxy materials. Regulation S–K, 17 C.F.R. § 229.10 *et seq.,* collects standard instructions for filing numerous forms required under the Securities Act of 1933 and the Securities Exchange Act of 1934, including registration statements, prospectuses, annual reports, and proxy statements. While 17 C.F.R. § 229.103 (Item 103), dealing with legal proceedings, does require the disclosure of nonroutine pending litigation against the company, the de-

gree to which the standard instructions apply to proxy statements in particular is governed by Schedule 14A, 17 C.F.R. § 240.14a–101,[17] which makes no mention of litigation concerning the company. Instead, Schedule 14A mandates the reporting of only criminal proceedings or pending lawsuits brought against the directors themselves. Thus, the *only* portion of Item 103 incorporated into Schedule 14A is Instruction 4, which concerns the disclosure of *pending* litigation in which a nominee for the board has an interest adverse to that of the corporation. Schedule 14A, Item 7(a), 17 C.F.R. § 240.14a–101 (incorporating Instruction 4 to Item 103 of Regulation S–K, 17 C.F.R. § 229.103). *See also In re Sears, Roebuck and Co. Securities Litig.,* 792 F.Supp. 977, 980–81 (E.D.Pa.1992) (Section 14(a) did not require disclosure of derivative suit against directors and company in connection with restructuring plan because directors were not adverse parties to the company).

Some of the other situations in which Schedule 14(a) requires the disclosure of pending litigation in proxy materials are when:

(1) the litigation involves a petition filed against the nominee under federal bankruptcy law or state insolvency law, Schedule 14A, Item 7(b), 17 C.F.R. § 240.14a–101 (incorporating Item 401(f) of Regulation S–K, 17 C.F.R. § 229.401);

(2) the litigation has resulted in a criminal conviction of the nominee or involves pending criminal charges, *id.;*

(3) the litigation resulted in an order, judgment or decree enjoining or temporarily suspending the nominee from participating in certain specified securities related professional activities, *id.;* or

---

17. This is by reason of Section 229.10, which provides in pertinent part:

  (a) **Application of Regulation S–K.**

This part ... states the requirements applicable to the content of the non-financial statement portions of:

  (2) Registration statements under section 12, annual or other reports under sections 13 and

15(d), annual reports to security holders and proxy and information statements under section 14 of the Exchange Act, and any other documents to be filed under the Exchange Act, *to the extent provided in the forms and rules under such Act.*

17 C.F.R. § 229.10(a)(2) (citations omitted) (emphasis added).

(4) the nominee was found to have violated state or federal securities law, *id.*[18]

Although not determinative, Schedule 14A is persuasive authority as to the required scope of disclosure in proxy materials, as the regulation provides "us with the [SEC's] expert view of the types of involvement in legal proceedings that are most likely to be matters of concern to shareholders in a proxy contest." *GAF Corp. v. Heyman,* 724 F.2d 727, 739 (2d Cir.1983). Thus, Schedule 14A mandates the disclosure, in connection with directors' elections, of litigation involving the individual board members and not of litigation only against the company, because the focus of attention during directors' elections is on the nominees themselves. Similarly, in the case of raincoat provisions which involve only the potential liability of individual directors and officers, attention should be concentrated on those persons and as a result the shareholders should be concerned with claims against them. To come to a contrary conclusion, we would be required to disregard the realities of managing a company as vast as General Electric, which with 280,000 employees is bound to face many legal proceedings.[19] Requiring broader disclosure in relation to a proxy solicitation concerning only the liability of individual directors and officers would simply "bury the shareholders in [the] avalanche of trivial information" against which the Supreme Court warned in *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. at 448, 96 S.Ct. at 2132.

It is not surprising then that the cases suggesting that pending law suits may be material usually were concerned with the failure to disclose litigation against *director nominees. See, e.g., Bell Atlantic Corp. v. Bolger,* 771 F.Supp. at 686–87; *Goldsmith v. Rawl,* 755 F.Supp. at 97–98; *Fry v. Trump,* 681 F.Supp. at 261; *Bertoglio v. Texas Int'l Co.,* 488 F.Supp. at 661; *Beatty v. Bright,* 318 F.Supp. at 173. While some cases have found that pending

litigation against the company might be material, they involved proxy solicitations concerning mergers or similar transactions, in which the shareholders would understandably focus on the operation of the company as a whole. *See, e.g., Zell v. Intercapital Income Sec., Inc.,* 675 F.2d 1041, 1043, 1045 (9th Cir.1982) (suits brought against parent of investment management fund may be material where proxy statement, seeking approval by fund's investors of an agreement between fund and parent, affirmatively represented that the parent was "responsibly managed" and lauded its "financial strength and the quality of its investment skills"); *cf. Prettner v. Aston,* 339 F.Supp. at 290 (omission from proxy statements, issued on behalf of merger of air carriers, of possible liability for damages to labor unions because of surviving carrier's resisting assumption of merged carriers's collective bargaining agreements might have been material but for fact that the potential liability amounted to less than one percent of combined assets). However, the overall operation of the company is not likely to be crucial to the shareholders' consideration of raincoat provisions. At any rate, as we have already explained, we believe the clear inference to be drawn from the proxy regulations is that proxy solicitations regarding raincoat provisions need only disclose pending claims against individual directors or officers. We will therefore affirm the district court's dismissal of the raincoat provision claims.

## IV. CONCLUSION

In view of the aforesaid, the order of March 30, 1992, will be affirmed to the extent that it dismissed the Section 14(a) monetary claims regarding the director elections, the Section 14(a) equitable claims regarding the raincoat provisions, and the supplemental state claims. The appeal will be dismissed as moot insofar as it is taken

---

**18.** For this reason, Levit's claim that the appellees violated regulation S–K Item 103 is without merit, since only Schedule 14A is applicable and it does not include Item 103.

**19.** The appellees assert in their brief that General Electric has 280,000 employees. While we do not find support for this number in the record, Levit does not suggest that General Electric is not a large company.

from the action of the district court dismissing the Section 14(a) equitable claim to set aside the directors' elections. To the extent that the order of March 30, 1992, denied Levit's equitable claim to set aside the directors' election, it must be vacated and accordingly we remand the case to the district court to dismiss the portions of the complaint in which Levit sought that relief, and to enter an order vacating the judgment entered on those aspects of the complaint. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).