In re BROWNING–FERRIS INDUSTRIES, INC. SHAREHOLDER DERIVATIVE LITIGATION.

Civ. A. Nos. H–91–3142, H–91–3638 and H–91–3568.

United States District Court, S.D. Texas, Houston Division.

March 3, 1993.

Eugene A. Spector, Philadelphia, PA, Richard D. Greenfield, Greenfield & Chimicles, Haverford, PA, plaintiffs.

Rufus Wallingford, Fulbright & Jaworski, Houston, TX, Samuel J. Buffone, Ropes and Gray, Washington, DC, J. Eugene Clements, Porter & Clements, Houston, TX, W. Boone Vastine, II, Browning Ferris Industries, Houston, TX, for defendants.

### MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

This consolidated amended complaint alleges two claims for relief against the individual defendants, officers or members of the Board of Directors of Browning Ferris Industries ("BFI"). Plaintiffs, shareholders of BFI, allege proxy fraud under section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. sec. 78m(a) and Rule 14a-9, 17 C.F.R. § 240 (Count I), and under the disclosure requirements of Delaware law (Count II). Plaintiffs also bring a derivative shareholders' action on behalf of BFI under Rule 23.1 of the Federal Rules of Civil Procedure, alleging breaches of the Delaware law of fiduciary duty. (Count III).

Defendants have moved to dismiss the claims under Rule 12(b)(6), Rule 9(b), and Rule 23.1 of the Federal Rules of Civil Procedure, on three grounds: (1) plaintiffs' failure to state a claim under section 14(a); (2) plaintiffs' failure to meet the Rule 9(b) pleading requirements for fraud; and (3) plaintiffs' failure to meet the pleading requirements for a shareholders' derivative suit. *See generally* (Docket Entry Nos. 30, 33, 39, 66, 67).

Under Rule 12(b)(6), a claim may not be dismissed unless it appears certain that the plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief. *Benton v. United States*, 960 F.2d 19 (5th Cir.1992); *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In a motion to dismiss, the allegations of the complaint must be accepted as true, *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), and the complaint construed favorably to the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The issues presented by the motion to dismiss are whether plaintiffs have alleged sufficient facts in their amended complaint to state federal claims for violations of the 1934 Securities Act, to state pendent state law claims for breach of fiduciary duty, and to satisfy Rule 23.1 pre-complaint demand re-

quirements. After careful review of the facts, parties' submissions, and applicable law, this court concludes that plaintiffs' claims must be dismissed for failure to state a claim under section 14(a). Therefore, this court GRANTS defendants' motions to dismiss. (Docket Entry Nos. 30, 33, 39, 66, 67). Because this court concludes that plaintiffs' amended complaint does not state a claim under section 14(a), the defendants' other two grounds for dismissal are not addressed. Furthermore, all other motions are rendered MOOT by this Order. (Docket Entry Nos. 3, 4, 5, 6, 32, 63, 74).

## 1. Background

### a. The Parties

BFI is a Delaware corporation engaged in solid waste management. The individual defendants are or were officers and/or directors of BFI. Plaintiffs purport to represent two groups of stockholders who own BFI stock and received BFI proxy materials. The first group, the class alleged for the section 14(a) cause of action stated in Count I of the amended consolidated complaint, are those stockholders who presently own BFI common stock and who owned voting shares on any of the record dates for the 1989–91 annual meetings. (Amended Consolidated Complaint, hereafter "Complaint," ¶ 88). The second group, the class alleged for the breach of the Delaware-based duty of disclosure, are those stockholders who presently own BFI common stock and who owned voting shares on any of the record dates for the 1987–91 annual meetings. (Complaint, ¶ 114). Both groups of plaintiffs bring Count III derivatively under Rule 23.1 to recover on behalf of the corporation for alleged violations of fiduciary duties based on Delaware law.

### b. Plaintiffs' Alleged Facts

Plaintiffs allege a twenty-five year history of price-fixing and anti-competitive practices on the part of BFI. As a result of these practices, BFI has been the subject of civil and criminal litigation around the country, which plaintiffs claim has been settled at great cost to the company, will expose BFI to future penalties, and has resulted in numerous lost corporate opportunities.

This litigation included a civil antitrust suit by the Ohio Attorney General in 1986 alleging that BFI and its major competitor, Waste Management, Inc., had entered into price-fixing agreements. (Complaint, ¶¶ 46, 51). The Ohio Attorney General's antitrust complaint named BFI Regional Vice President Bruce E. Ranck ("Ranck") as an individual defendant. Ranck was a BFI officer who was elected to the BFI Board of Directors for the first time in 1990. In soliciting proxies in favor of Ranck's election, the defendants did not disclose in the proxy materials that in 1987, Ranck had received a "target letter" in connection with the same alleged conspiracy involved in the Ohio Attorney General's civil antitrust suit. In September 1987, Ranck received a letter from the United States Department of Justice stating that the Ohio "grand jury has substantial evidence" linking him to the "commission of a crime," and that the Department of Justice was "seriously considering recommending to the grand jury" that he be indicted. (Complaint, ¶¶ 48–49; Exhibit B). BFI settled the federal antitrust case by a guilty plea to one count and payment of a $1 million fine. (Complaint, ¶¶ 48–49, 51). BFI settled the Ohio Attorney General's case by a consent judgment and payment of a $350,000 fine. (Complaint, ¶¶ 46–51). Mr. Ranck was not indicted.

Plaintiffs also allege that in 1987, BFI's Board sought shareholder approval for changes to the by-laws and certificate of incorporation narrowing the liabilities of the directors and officers and providing indemnification for certain liabilities. Plaintiffs allege that these amendments, referred to as the "Raincoat Provisions," were impermissibly tainted by defendants' failure to disclose facts material to the shareholders' approval. (Complaint, ¶¶ 55, 56, 99, 101–102, 106).

In 1987, BFI was sued again in a class action alleging nationwide price-fixing on the part of BFI and its top corporate officers. This lawsuit was subsequently settled for $30 million. (Complaint, ¶¶ 57–59). In 1990, BFI was again sued in a class action alleging that it prepared false information to inves-

tors regarding its liability in the antitrust class action and other litigation. This suit is now pending in the Southern District of Texas. (Complaint, ¶ 59).

Plaintiffs allege that throughout BFI's history, it has failed to take any action against the officers and employees responsible for the events that resulted in this litigation and for the resulting losses to the company. (Complaint, ¶¶ 39, 41, 44, 52, 59).

Plaintiffs also allege a twenty-five year history of BFI's violations of environmental laws around the country which have resulted in civil and criminal charges that BFI settled by paying fines and penalties. (Complaint, ¶¶ 68–69, 72–81). As a result of these charges, BFI has lost large amounts of money invested in operations that had to be suspended or abandoned due to regulatory violations.

Plaintiffs finally allege two occasions of insider trading by certain BFI officers and directors in 1987 and 1991, shortly before BFI's announcement of poor results. These allegations are not made the basis of any claim, but are raised in the consolidated amended complaint as evidence of "management's continued pattern of placing individual interests above the interests of BFI." (Complaint, ¶ 86).

### c. The Derivative Claims

On September 18, 1990, and again on November 13, 1990, plaintiff Sally Yeager, through her counsel, presented written demands on BFI's Board to pursue the same claims that all plaintiffs now make in this consolidated suit. The first demand sought legal action by BFI against various individuals for claims of mismanagement and waste. The second demand asked the Board to institute legal action against various individuals responsible for BFI's losses in connection with the class action securities litigation filed in 1990. The Board convened a special committee to review the demands and submit a report. That report, issued in September 1991, recommended that the Board reject the first demand and decline to take any action on the second on the ground that it was premature because the class action was still pending and the effect on BFI unknown.

The *Yeager* suit, a purported class and derivative action, was filed on October 4, 1991, in the United States District Court for the Eastern District of Pennsylvania. On October 15, 1991, Melvin Ronald Cardonick filed a derivative and class action suit in the same court, Civil No. H–91–3638. On October 25, 1991, Susan Cohen filed a derivative shareholder suit in this Court, Civil No. H–91–3142. The cases were subsequently consolidated and an amended consolidated complaint filed. None of the named plaintiffs besides Yeager made any demand on the BFI Board before filing suit.

The derivative claim focuses on alleged breaches of fiduciary duties under Delaware law, based on the waste of corporate assets by defendants from alleged *ultra vires* criminal conduct; gross mismanagement; abuse of control; fraud and deceit; and negligent misrepresentation. Plaintiffs seek a declaration that the individual defendants have breached their fiduciary duties; an injunction requiring BFI to develop and implement court-supervised policies to prevent recurrences; a requirement that the individual defendants pay BFI the amounts the company has been damaged by the alleged wrongful acts or amounts the individuals have been unjustly enriched; and an award of attorney, expert, and accounting fees.

### d. The Proxy Claims

Plaintiffs allege that the 1989–91 proxy statements violated section 14(a) of the 1934 Exchange Act and that the 1987–91 proxy statements violated disclosure duties based in Delaware law. Plaintiffs allege that the proxy materials were deficient because they failed to disclose the mismanagement and nationwide price-fixing schemes; failed to disclose in the proxy materials distributed for the 1990 Board elections that Bruce Ranck, a director nominee, had received a "target letter" relating to a grand jury investigation in 1987; and generally were intended to "deceive the members of the Proxy Class into voting as requested by management. . . ." (Complaint, ¶ 105). Plaintiffs ask the court to nullify the elections and re-elections of the directors from 1987–91; to

nullify the enactment of the Raincoat Provisions at the 1987 annual meeting; and to declare the corporate actions listed in the consolidated complaint *"ultra vires"* and illegal since 1987. (Complaint, Prayer for Relief, ¶¶ c–d).

The section 14(a) proxy claim raised in Count I seeks only equitable relief, not damages, as to the proxy materials sent in 1989, 1990, and 1991. Plaintiffs seek to void the elections of directors in 1989, 1990, and 1991, and to void the adoption of the Raincoat Provisions in 1987. (Complaint, ¶ 88).

## 2. Count I: Failure to State a Claim under Section 14(a).

■ Defendants argue that the consolidated amended complaint must be dismissed because plaintiffs fail to state a claim under section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a). To state a claim under section 14(a), plaintiffs must plead that the proxy statements contained a misstatement or omission of material fact, and that the alleged injury resulted from a transaction directly authorized by the proxy solicitation. *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970); *In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F.Supp. 227, 237 (W.D.Tex.1979). In the present case, plaintiffs seek to void two sets of transactions under section 14(a): (1) the approval of the Raincoat Provisions in 1987, and (2) the election or re-election of directors in 1989–91.

The elements of a section 14(a) claim are: (1) defendants misrepresented or omitted a material fact in a proxy statement, *Virginia Bankshares, Inc. v. Sandberg*, —— U.S. ——, ——, 111 S.Ct. 2749, 2757, 115 L.Ed.2d 929 (1991); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *Justin Indus. v. Choctaw Sec., L.P.*, 920 F.2d 262, 267 (5th Cir. 1990); (2) defendants acted at least negligently in distributing the proxy statement, *Herskowitz v. Nutri/System, Inc.*, 857 F.2d 179, 189–90 (3rd Cir.1988), *cert. denied*, 489

U.S. 1054, 109 S.Ct. 1315, 103 L.Ed.2d 584 (1989); and (3) the false or misleading proxy statement was an essential link in causing the corporate actions, *International Broadcasting Corp. v. Turner*, 734 F.Supp. 383, 390 (D.Minn.1990); *Halpern v. Armstrong*, 491 F.Supp. 365, 378 (S.D.N.Y.1980).

Plaintiffs purport to represent a class of stockholders from 1989–91 for the Count I claim of section 14(a) violations. (Complaint ¶ 88). Plaintiffs therefore have no basis to challenge the "Raincoat Provisions" adopted in 1987 under section 14(a). *See generally, Gaines v. Haughton*, 645 F.2d 761, 774 (9th Cir.1981), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); *Murray v. Hosp. Corp. of America*, 682 F.Supp. 343, 348 (M.D.Tenn.1988), *aff'd*, 873 F.2d 972 (6th Cir. 1989); *Gabrielsen v. BancTexas Group Inc.*, 675 F.Supp. 367, 373–74 (N.D.Tex.1987).

The issue, therefore, is whether the omitted disclosures were material under section 14(a) to the elections and re-elections of directors in 1989, 1990, and 1991.[1] Plaintiffs allege that four different categories of omissions in the proxy materials distributed for Board elections were "material:" (1) the failure to disclose past antitrust and environmental proceedings; (2) the failure to disclose defendant Ranck's possible involvement in criminal misconduct; (3) the failure to reveal the demand on the Board and the appointment of a special committee; and (4) the failure to reveal that the directors had not created adequate internal controls to deter unlawful conduct. (Docket Entry No. 70, pp. 11–12). Defendants argue that none of the alleged omissions are "material" as a matter of law because defendants were not required to disclose the information in the proxy materials.

An omitted fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). However, as the Supreme Court has cautioned:

---

1. Although the parties do not address the issue, the election of directors for 1989 through 1991 may be moot in whole or in part. Courts have found suits seeking to void the election of directors moot when those directors' terms have already lapsed. *See generally, General Electric v. Cathcart*, 980 F.2d 927, 934 (3rd Cir.1992).

[T]he disclosure policy embodied in the proxy regulations is not without limit.... Some information is of such dubious significance that insistence on its disclosure may accomplish more harm than good ... [I]f the standard of materiality is unnecessarily low, not only may the corporation and its management be subjected to liability for insignificant omissions or misstatements, but also management's fear of exposing itself to substantial liability may cause it to simply bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decision-making.

*Id.* at 448–49, 96 S.Ct. at 2132.

The Supreme Court has stated that the determination of materiality concerns "a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts." *Id.* at 450, 96 S.Ct. at 2132–33.

### 1. The Failure to Disclose Past and Pending Lawsuits

■ Plaintiffs assert that the shareholder votes on the Board elections and re-elections in 1989–91 would have been materially affected if the "numerous legal actions alleging violations of antitrust and environmental laws and regulations" had been disclosed. (Docket Entry No. 70, p. 13). Although plaintiffs allege a number of antitrust and environmental lawsuits (Complaint ¶¶ 27–82), most of these lawsuits were settled long before the proxy materials at issue in this case were sent.

Plaintiffs cite numerous cases generally stating that information as to pending lawsuits could be material to a shareholder's vote for the directors. *See generally, Fry v. Trump,* 681 F.Supp. 252, 260–61 (D.N.J. 1988); *Bertoglio v. Texas Int'l Co.,* 488 F.Supp. 630, 661 (D.Del.1980). These cases hold that information as to certain *pending* litigation can be material under section 14(a). *See, e.g., Goldsmith v. Rawl,* 755 F.Supp. 96, 97 (S.D.N.Y.1991). However, there is no such disclosure requirement for all past settled or resolved lawsuits, not pending during the period covered by the proxy statements. Such a requirement is not consistent with either section 14(a) or the federal regula-

tions. As the Third Circuit has recently held:

Although not determinative, Schedule 14A is persuasive authority as to the required scope of disclosure in proxy materials, as the regulation provides "us with the [SEC's] expert view of the types of involvement in legal proceedings that are most likely to be matters of concern to shareholders in a proxy contest." *GAF Corp. v. Heyman,* 724 F.2d 727, 739 (2d Cir.1983).

*General Electric v. Cathcart,* 980 F.2d 927, 937 (3rd Cir.1992).

In *United States v. Matthews,* 787 F.2d 38, 48 (2nd Cir.1986), the court stated that "[w]e deem it significant that those courts which have spoken in this area ... almost universally have rejected efforts to require that management make qualitative disclosures that were not at least implicit in the Commission's rules." Plaintiffs' assertion that the proxy solicitations omitted information as to past, settled lawsuits against the company has no basis in the regulations governing disclosure. Plaintiffs have failed to state any basis in the facts and circumstances present here to warrant the use of section 14(a) to expand these requirements.

Plaintiffs also allege that environmental lawsuits and proceedings pending against the company at the time of the proxy solicitations should have been disclosed. (Complaint ¶¶ 72, 73, 75, 77, 79, 80, 81, 82). However, plaintiffs do not indicate that any of the pending suits were against directors elected by votes on the proxy solicitations at issue. The cases plaintiffs cite only hold that pending lawsuits against the directors elected by the proxy solicitations can be material. (Docket Entry No. 70, p. 15, 15 n. 10). *See Bell Atlantic Corp. v. Bolger,* 771 F.Supp. 686, 686 (E.D.Pa.1991) (lawsuit against Bell and its officers and directors); *Fry v. Trump,* 681 F.Supp. 252, 260 (D.N.J.1988) (lawsuits against Bally and its directors for breaches of fiduciary duty); *Bertoglio v. Texas Int'l Co.,* 488 F.Supp. 630, 661 (D.Del. 1980) (lawsuit against director nominee for securities fraud); *Robinson v. Penn Central Co.,* 336 F.Supp. 655, 658 (E.D.Pa.1971) (law-

suits against prior Board members who selected successors for fraud and breach of fiduciary duty). As the Third Circuit has stated:

> ... Schedule 14A mandates the disclosure, in connection with directors' elections, of litigation involving the individual board members and not of litigation only against the company, because the focus of attention during directors' elections is on the nominees themselves....

*Cathcart*, 980 F.2d at 937.

In the schedule specifically relating to proxy statements, Schedule 14a, 17 C.F.R. § 240.14a–101 *et seq.*, the regulations state that proxy materials must disclose litigation pending in the past five years "that are material to an evaluation of the ability or integrity of any director, person nominated to become a director, or executive officer of the registrant" only if:

> (1) the litigation involves a petition filed against the nominee under federal bankruptcy law or state insolvency law;
>
> (2) the litigation has resulted in a criminal conviction of the nominee or involves pending criminal charges;
>
> (3) the litigation resulted in an order, judgment or decree enjoining the nominee from participating in certain specified securities related professional activities;
>
> (4) the litigation resulted in an order, judgment or decree suspending the nominee from participating in certain specified securities related professional activities;
>
> (5) the nominee was found to have violated state or federal securities law; or
>
> (6) the nominee was adjudged by a court of competent jurisdiction to have violated any federal commodities law.

Schedule 14A, Item 7(b), 17 C.F.R. § 240.-14a–101 (incorporating Item 401(f) of Regulation S–K, 17 C.F.R. § 229.401). Plaintiffs do not allege that defendants violated any disclosure regulation.

Although compliance with these provisions does not guarantee compliance with section

14(a), as noted above, courts have held that "the Commission's expert view of the types of involvement in legal proceedings that are most likely to be matters of concern to shareholders in a proxy contest," is an important source in deciding materiality. *Heyman*, 724 F.2d at 739. The Third Circuit recently upheld a dismissal of section 14(a) claims, holding that proxy solicitations for elections concerning directors' liability did not omit material information by disclosing only pending litigation involving the nominees, not the company. *Cathcart*, 980 F.2d at 937. The court reasoned that to reach a contrary conclusion:

> ... we would be required to disregard the realities of managing a company as vast as General Electric, which with 280,000 employees is bound to face many legal proceedings. Requiring broader disclosure in relation to a proxy solicitation concerning only the liability of individual directors and officers would simply "bury the shareholders in [the] avalanche of trivial information" against which the Supreme Court warned in *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. at 448, 96 S.Ct. at 2132.
>
> It is not surprising then that the cases suggesting that pending law suits may be material usually were concerned with the failure to disclose litigation against *director nominees.*

*Id.*

The same reasoning applies to this case. Plaintiffs do not allege that defendants were required to disclose any of the pending lawsuits under the applicable SEC regulations or rules. 17 C.F.R. § 229.401(f). Plaintiffs do not allege any relationship between the pending lawsuits or proceedings and the directors elected to the Board between 1989 and 1991 that would make a disclosure requirement "at least implicit in the Commission's rules." *Matthews*, 787 F.2d at 48. Under the applicable authorities, the court finds that the omitted disclosures do not meet the requirements under section 14(a).[2]

---

**2.** In addition to the fact that the pending lawsuits and proceedings were not against the director nominees, defendants also point out that plaintiffs' argument that the 1989, 1990 and 1991

proxy statements fraudulently omitted material facts concerning lawsuits and environmental proceedings ignores BFI's public reports filed with the SEC. "An inquiry into the sufficiency of

### 2. Failure to Disclose Yeager Demand or Appointment of Special Committee

■ Plaintiffs assert that the failure to disclose plaintiff Yeager's demand or the Board's appointment of a special committee to investigate the shareholder's demand is a material omission under section 14(a). In support of this argument, plaintiffs cite *Westinghouse Elec. Corp. v. Franklin*, 789 F.Supp. 1313 (D.N.J.1992).[3] This case involved an alleged cover-up of criminal activities and related lobbying activities. *Id.* at 1315–17. However, the court did not analyze the demand issue but only briefly stated that the demand may have been material and refused to dismiss. *Id.* at 1321.

This court finds the reasoning in *Bolger v. First State Finan. Serv.*, 759 F.Supp. 182 (D.N.J.1991), more persuasive. In *Bolger*, the plaintiff argued that the failure to reveal the existence of a special committee or an investigation into the activities of Board members before a Board election violated section 14(a). *Id.* at 194–95. The court held that the corporation had no duty to reveal such a demand and investigation in the proxy material, reasoning as follows:

> A company has no duty to disclose to shareholders unsubstantiated allegations ... First State was under no obligation to disclose Bolger's mere allegations as to illegal conduct and mismanagement by First State officers and directors. Bolger therefore cannot maintain that First State was obligated to disclose whatever prelimi-

nary steps it took in response to those allegations. In essence, Bolger argues First State was obligated to implicate its officers in wrong-doing based on his unproven charges.... Bolger attempts to create liability for First State by pyramiding his legal claim on the as yet unsubstantiated allegations contained in his letters. He has not cited any authority which requires such a result. Bootstrapping a series of unsupported allegations does not result in a sound basis for this action. A reasonable First State shareholder would not consider what remain merely baseless allegations to be material in an election of an unopposed slate of director nominees.

*Id.* at 194.

The same reasoning applies here. This court finds that plaintiffs cannot state a section 14(a) claim based on the failure to reveal plaintiff Yeager's demand and the Board's subsequent investigation into that demand.

### 3. The Failure to Disclose the Criminal Investigation of Ranck

■ Plaintiffs argue that defendants' failure to disclose the criminal investigation of defendant Ranck states a claim under section 14(a). (Docket Entry No. 70, p. 17). According to plaintiffs, Ranck received a "target" letter from the Antitrust Division of the Department of Justice in 1987 that stated an Ohio grand jury had "substantial evidence" linking Ranck to the commission of a crime. Plaintiffs allege that one month after this letter was sent, BFI agreed to plead guilty and pay fines to settle the underlying investi-

---

disclosure in a proxy contest is not limited to those documents specifically labeled as proxy statements." *Bertoglio*, 488 F.Supp. at 642. Defendants contend, and plaintiffs do not dispute, that every antitrust case plaintiffs cite as pending during the relevant time period was disclosed. *See* BFI's 1988 Annual Report at 48; 1988 Form 10–K at 22; 1989 Annual Report at 51; 1989 Form 10–K at 20; Annual Report at 54–55; 1990 Form 10–K at 18. Defendants also contend that BFI disclosed the pending environmental proceedings plaintiffs cite in its public filings with the SEC. *See e.g.,* 1989 Form 10–K at 23–24; 1991 Form 10–K at 24; March 31, 1990 Form 10–Q at 14–15. These public documents may be considered on defendants' motion to dismiss. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773–74 (2d Cir.1991) (on motion to dismiss, court may properly consider documents incorporated by reference in complaint, and may take

judicial notice of documents filed with the SEC); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir.1991). Plaintiffs' claims under section 14(a) are also precluded as a matter of law by the disclosures in the Annual Reports and Form 10–Ks.

3. Plaintiffs also cite *Bradshaw v. Jenkins*, [1983–1984 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,719, 1984 WL 2405 (W.D.Wash. Mar. 9, 1984) for the proposition that the failure to disclose a demand may be material under section 14(a). The court in *Bradshaw* specifically stated that "Seafirst has not argued in the alternative that it had no duty to disclose this information." The corporation instead argued that it had adequately disclosed the information, a different argument than defendants make here.

gation. Plaintiffs state that "a reasonable shareholder would have found this information important (indeed, critical) in deciding whether or not to elect Ranck to the Board" in 1990. (Docket Entry No. 70, p. 17).

As noted above, in deciding a materiality issue under section 14(a), a court is to look to SEC Regulation S–K, 17 C.F.R. § 229.10, *et seq.* In the section relating to directors, executive officers, promoters, and control persons, 17 C.F.R. § 229.401(f), the Code of Federal Regulations mandates disclosure as follows:

> (f) *Involvement in certain legal proceedings.* Describe any of the following events that have occurred during the past five years and that are material to an evaluation of the ability or integrity of any director, person nominated to become a director or executive officer of the registrant:
>
>     *     *     *     *     *     *
>
> (2) such person was convicted in a criminal proceeding or is a named subject of a pending criminal proceeding (excluding traffic violations and other minor offenses);
>
>     *     *     *     *     *     *

Plaintiffs do not allege that Ranck was ever convicted of a crime, that he was indicted, that he was the named subject of a pending criminal proceeding, or even that he remained under investigation. Disclosure of his receipt of a target letter was not required under the rules.

Although compliance with these provisions does not guarantee compliance with section 14(a), as noted above, courts have held that "the Commission's expert view of the types of involvement in legal proceedings that are most likely to be matters of concern to shareholders in a proxy contest," is an important source in deciding materiality. *Heyman,* 724 F.2d at 739; *Cathcart,* 980 F.2d at 937. No disclosure was required under the Code of Federal Regulation provisions because at the time the proxy materials were distributed, Ranck was not convicted, indicted, or even the subject of a pending criminal proceeding.

This court finds nothing explicit or implicit in the Commission's rules to require management to disclose in a proxy solicitation that one of the nominees for the Board received a "target letter" in connection with a criminal investigation, some three years earlier, that did not result in an indictment, in an investigation no longer pending.

In *United States v. Matthews,* the defendant was criminally charged for failure to disclose an alleged conspiracy in proxy materials related to his election as a director. 787 F.2d at 42. The court held that the defendant did not violate section 14(a) because there were no criminal charges pending when the proxies were solicited. *Id.* at 49. The court stated, "Matthews was not legally required to confess that he was guilty of an uncharged crime in order that Southland's shareholders could determine the morality of his conduct." *Id.; see also, Bolger,* 759 F.Supp. at 194 (a "company has no duty to disclose to shareholders unsubstantiated allegations"); *Amalgamated Clothing v. J.P. Stevens & Co.,* 475 F.Supp. 328, 331 (S.D.N.Y.1979) ("proxy rules cannot be construed to require such self-accusation of illegal intentions"), *vacated on other grounds,* 638 F.2d 7 (2nd Cir.1980).

In support of their argument, plaintiffs cite *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22 (1st Cir.1987) and *Ballan v. Wilfred Am. Educ. Corp.,* 720 F.Supp. 241 (E.D.N.Y.1989). Neither of these cases hold that the failure to reveal a past criminal investigation is material under section 14(a).

In *Roeder,* the court addressed a corporation's failure to reveal a bribery investigation in a Rule 10(b)–5 case. *Id.* at 24–28. The court dismissed the complaint because "Roeder's complaint does not allege facts that, if proved, would establish Alpha had a duty to disclose the alleged illegal payments." *Id.* at 28. *Roeder* does not stand for the proposition that failure to disclose an investigation into possible criminal conduct, nearly three years old, that did not result in indictment, is actionable under section 14(a).

In *Ballan,* the court addressed the facts a corporation must disclose as to wide-ranging criminal indictments and investigations of numerous corporate employees. *Id.* at 248–50. The court specifically held that "defendants

were not bound to predict as the 'imminent' or 'likely' outcome of the investigations that indictments of [the company] and its chief officer would follow...." *Id.* at 248. The court noted that "cases in this circuit have held, however, that the SEC's proxy disclosure rules do not require a company's management to confess guilt to uncharged crimes ... or 'to accuse itself of antisocial or illegal policies.'" *Id.* at 249 (*quoting GAF Corp. v. Heyman,* 724 F.2d 727, 740 (2nd Cir.1983)).[4]

None of these cases that have held disclosure required under section 14(a) involved facts similar to the receipt of a "target letter" years earlier that did not result in any indictment against the director seeking election. None of these cases support plaintiffs' claims.

### 4. The Directors' Failure to Institute Adequate Internal Controls

■ Plaintiffs assert that "Defendants' failure to impose adequate internal controls was a recipe for disaster." (Docket Entry No. 70, p. 20). Plaintiffs assert that this alleged mismanagement resulted in BFI paying "tens of millions of dollars" in fines and the loss of "hundreds of millions of dollars in corporate opportunities." (Docket Entry No. 70, p. 20).

These allegations do not state a claim for fraudulent omissions in proxy materials. The governing cases hold that "mismanagement" is not actionable under section 14(a). *Maher v. Zapata Corp.,* 714 F.2d 436, 444 n. 16 (5th Cir.1983); *In re: Commonwealth Oil/Tesoro Petroleum Corp.,* 467 F.Supp. 227 (W.D.Tex.1979). "The cases uniformly hold that a claim seeking relief for injuries occasioned by mismanagement or breach of fiduciary duty is not redressable under the proxy rules simply by virtue of the fact that acts were committed by directors who would not have been elected but for the proxy solicitation." *Commonwealth Oil,* 467 F.Supp. at 237.

This court therefore dismisses plaintiffs' securities fraud claim. The complaint does

not allege facts that, if proved, would establish a duty to disclose the specified omissions that is actionable under section 14(a). Plaintiffs allege injuries to BFI that stem from corporate waste and mismanagement, acts that constitute the alleged underlying breaches of fiduciary duty defined by Delaware law. "Such acts of corporate waste and breach of fiduciary duty form the bases of state claims and do not state a claim under the federal securities laws." *In re Tenneco Secs. Litig.,* 449 F.Supp. 528, 531 (S.D.Tex. 1978); *Gaines,* 645 F.2d at 776; *Abbey v. Control Data Corp.,* 603 F.2d 724, 732 (8th Cir.1979).

### 3. Counts II and III: Breach of Fiduciary Duty Claims

In order to permit this court to exercise pendent jurisdiction over state law claims for breaches of the duty to disclose and breaches of fiduciary duty, plaintiffs generally must state a legally sufficient federal claim. *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir.1992); *Olive Can Co. v. Martin,* 906 F.2d 1147, 1153 (7th Cir.1990). The Fifth Circuit requires an analysis "balancing the values of economy, convenience, fairness, federalism, and comity." *Parker & Parsley,* 972 F.2d at 585. Weighing these factors, this court must dismiss Counts II and III. This case is still in the preliminary stages of litigation; no substantial judicial resources have been committed to the nonfederal claims; dismissal will not cause the parties undue inconvenience; and the doctrines of federalism and comity support dismissal of the pendent claims. *Id.* at 585–90.

Based on the above, plaintiffs' amended consolidated complaint is dismissed.

---

4. The *Ballan* language on which plaintiffs rely is that: "[i]t does not follow, however, that defendants need not disclose facts showing that Wilfred's management or employees committed specific acts or permitted specific practices that an informed investor would consider as poten-

tially endangering its future financial performance. Such acts or practices are not speculations or confessions but 'facts' relevant to a person's decision...." *Id.* at 249. The court did not explain the specific acts requiring disclosure but the language is consistent with the SEC rule.