**Albert HULLIUNG, Individually and On Behalf of All Others Similarly Situated, Plaintiffs,**

v.

**David E. BOLEN, et al., Defendants.**

**Civil Action No. 3:06–CV–1083–N.**

United States District Court,
N.D. Texas,
Dallas Division.

April 18, 2008.

Patricia J. Villareal, Greg Weselka, Michael L. Davitt, Tamara Marinkovic, Thomas R. Jackson, Jones Day, Michael L. Smith, William A. Brewer, III, Bickel & Brewer, Dallas, TX, Robert H. Klonoff, Jones Day, Reavis & Pogue, Washington, DC, for Defendants.

## ORDER

DAVID C. GODBEY, District Judge.

This Order addresses Defendants David E. Bolen, Jack E. Bush, Richard E. Hanlon, Kristin L. Magnuson, Richard C. Marcus, Donald R. Miller, Jr., Liz Minyard, R. Don Morris, R. Michael Rouleau, Cece Smith, Charles J. Wyly, Jr., Sam Wyly, and Michaels Stores, Inc.'s ("Michaels") motion to dismiss [41]. For the reasons given below, the Court grants Defendants' motion.

### I. FACTUAL BACKGROUND

This case is a consolidation of three derivative class actions brought on behalf of Michaels following allegations that the company granted backdated stock options to various of its directors and officers between 1993 and 2000. Plaintiffs bring causes of action against Michaels and various former officers and directors of the company for violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n(a), 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a–9, 17 C.F.R. § 240.14a–9, alleging that three proxy solicitations issued by the company between 2004 and 2006 (the "Proxies") contained materially false or misleading statements because they did not disclose the company's past backdating practices,[1] failed to disclose that Charles and Sam Wyly owned a much larger share of the company than reported, and incorporated by reference inaccurate financial disclosures included in Michaels' annual Form 10–K reports.

### II. MOTION TO DISMISS STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Id.* at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations

---

1. Any claims Plaintiffs may have had for the underlying backdating itself are barred by the statute of repose (initially set at three years, but later extended to five by the Sarbanes–Oxley Act of 2002, 28 U.S.C. § 1658(b), for all claims not already time-barred as of July 30, 2002) for claims arising under section 10(a) of the Securities and Exchange Act. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); *In re Affiliated Computer Servs. Derivative Litig.,* 540 F.Supp.2d 695, 701 (N.D.Tex.2007) ("A claim under § 10(b) that is based on the backdating itself accrues [for purposes of the statute of repose] on the date the option grant was made."). Accordingly, with these claims for proxy fraud, Plaintiffs essentially attempt to do through the backdoor what they are barred from doing through the front.

omitted). In ruling on a Rule 12(b)(6) motion, the court must limit its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999).

**III. PLAINTIFFS' SECTION 14(A) AND RULE 14A–9 CLAIMS FAIL BECAUSE PLAINTIFFS CANNOT ALLEGE ONE OR MORE ELEMENTS OF PROXY FRAUD WITH RESPECT TO EACH DEFENDANT**

Plaintiffs fail to state a claim under section 14(a) and Rule 14a–9 (a "Proxy Fraud Claim") because they cannot make a prima facie showing as to any defendant. Section 14(a) prohibits the solicitation of proxies "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest and for the protection of investors." 15 U.S.C. § 78n(a). Rule 14a–9, in turn, makes it unlawful to issue any proxy statement "which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a–9.

▮ To state a Proxy Fraud Claim, a plaintiff must show that "(1) defendants misrepresented or omitted a material fact in a proxy statement ...; (2) defendants acted at least negligently in distributing the proxy statement ...; and (3) the false or misleading proxy statement was an essential link in causing the [loss-generating] corporate actions." *In re Browning–Ferris Indus., Inc., S'holder Derivative Litig.*, 830 F.Supp. 361, 365 (S.D.Tex.1993) (inter-

nal citations omitted). Here, Plaintiffs fail to establish at least one of these three elements with respect to each Defendant.

***A. Plaintiffs Cannot Show Negligence On the Part of Defendants Who Left Michaels Years Before the Proxies Were Issued***

▮ The Court first dismisses Plaintiffs claims against Bolen, Bush, Magnuson, and Miller because all four defendants left Michaels seven years or more before the Proxies were distributed. As a matter of common sense, a director or executive simply cannot be negligent in distributing allegedly misleading proxies if he or she was not with a company at the time they were issued. *Accord Virginia M. Damon Trust v. N. Country Fin. Corp.*, 325 F.Supp.2d 817, 824 (W.D.Mich.2004) (holding that directors who joined the defendant company's board after the proxy at issue was distributed could not be held liable under section 14(a)). Here, publicly available SEC filings show that Bush left Michaels in 1995, Bolen in 1996, and both Morris and Magnuson in 1997.[2] The earliest of the Proxies at issue in this case, however, was not distributed until 2004. Accordingly, Plaintiffs fail to state a Proxy Fraud Claim against these Defendants.

***B. All Claims Based on Alleged Inaccuracies in Michaels' Form 10–Ks Fail Because the Proxies Do Not Specifically Incorporate Those Reports***

▮ The Court further dismisses Plaintiffs' Proxy Fraud Claims to the extent they are based on alleged inaccuracies included in Michaels' annual Form 10–K reports because the Proxies do not incorporate those reports. Inaccuracies in an

---

**2.** Although a court cannot generally consider evidence outside the pleadings in ruling on a motion to dismiss, exceptions to this rule include "matters subject to judicial notice (such as *filings with the SEC* ), stock prices, and matters of public record." *In re Capstead Mortgage Corp. Sec. Litig.*, 258 F.Supp.2d 533, 543 n. 2 (N.D.Tex.2003) (emphasis added).

annual report cannot form the basis for proxy fraud liability unless the annual report is specifically incorporated into proxy materials. *See, e.g., Stricklin v. Ferland,* No. Civ. A. 98–3279, 1999 WL 89694, at *2 (E.D.Pa. Jan. 19, 1999) ("Flaws in annual reports are not actionable under Rule 14a–9 unless the issuer specifically requests that they be treated as part of the proxy material or incorporated them into the materials by reference."); 17 C.F.R. § 240.14a–3(c) ("The report is not deemed to be 'soliciting material' . . ., except to the extent that the registrant specifically requests that it be treated as part of the proxy soliciting material or incorporates it in the proxy statement or other filed report by reference."). "Absent a specific declaration of incorporation, a mere mention of the annual report does not incorporate it by reference . . .; otherwise, an annual report would automatically be incorporated by reference in any proxy statement which ever recognized the existence of, or merely accompanies, an annual report." *Markewich v. Adikes,* 422 F.Supp. 1144, 1147 (E.D.N.Y.1976) (internal citation omitted).

Here, each of the Proxies merely notes that Michaels' shareholders may obtain a copy of the annual Form 10–K at no cost to them upon request.[3] *See, e.g.,* Pl.'s Compl. ¶ 121 ("Copies of our Annual Report on Form 10–K (excluding exhibits) filed with the Securities and Exchange Commission are available, without charge, upon written request. . . ."). The Court holds that this sort of "mere mention" does not rise to the level of specific incorporation required by law. Accordingly, any misrepresentations or omissions included those forms are not actionable under section 14(a) or Rule 14a–9.

## C. Plaintiffs' Remaining Proxy Fraud Claims Also Fail Because Plaintiffs Cannot Allege An "Essential Link" Between the Proxies and Any Loss

Plaintiffs remaining Proxy Fraud Claims likewise fail because Plaintiffs cannot establish an "essential link" between the Proxies and any improper corporate action. To state a claim for Proxy Fraud, plaintiffs must plead an "essential link" between the proxies at issue and the harm they have alleged—that is, they must establish that their "alleged injury resulted from a transaction *directly authorized* by the proxy solicitation." *In re Browning–Ferris Indus., Inc.,* 830 F.Supp. at 365 (emphasis added); *see also In re NAHC, Inc. Sec. Litig.,* No. CIV.A. 00–4020, 2001 WL 1241007, at *22 (E.D.Pa. Oct. 17, 2001) ("[D]amages are recoverable under Section 14(a) only when the transaction that was approved through the false proxy statement was *the 'direct cause* of the pecuniary injury for which recovery is sought.'" (quoting *Gen. Elec. Co. v. Cathcart,* 980 F.2d 927, 933 (3d Cir.1992)) (emphasis added)).

In their remaining Proxy Fraud allegations, Plaintiffs assert that the Proxies were false or misleading because they failed to disclose the company's past backdating practices and failed to provide an accurate ownership share for Charles and Sam Wyly. However, Plaintiffs cannot successfully link any Proxy containing either of these alleged inaccuracies to any losses sustained by the company.

As a matter of common sense, the Proxies cannot be an essential link to harm caused by stock option backdating that occurred years prior to the Proxies' issu-

---

**3.** The Proxies do make a few additional stray references to the Form 10–Ks, but none that come anywhere near a specific declaration of incorporation. *See, e.g.,* Pl.'s Compl. ¶ 124 ("the Audit Committee recommended to the Board of Directors that the audited financial statements be included in our Annual Report on Form 10–K").

ance. Plaintiffs devote most of their pleadings to detailing losses sustained by the company as a result of alleged stock option backdating practices that occurred between 1993 and 2000. However, it is simply illogical to suggest that the Proxies could be an "essential link" to—i.e., directly authorize—corporate actions that were taken three years or more *before* any of the Proxies were distributed.[4]

Plaintiffs further fail to directly link any other harmful corporate actions to the Proxies. Plaintiffs elsewhere allege in their pleadings that Michaels suffered harm as a result of inadequate internal controls and a depressed sale price when the company was purchased in 2006. However, as discussed above, it is well established that the "essential link" required for proxy fraud liability can only be established when the proxy at issue directly authorizes the loss-generating corporate action. *See In re Browning–Ferris Indus., Inc.*, 830 F.Supp. at 365. Here, it is undisputed that the Proxies authorized only (1) annual elections of directors, (2) an amendment to Michaels' certificate of incorporation to increase the number of authorized shares to facilitate a 2004 stock split, and (3) approval of a 2005 "Incentive Compensation Plan" that would allow for future options to be granted once the plan was formally adopted at the company's 2005 annual meeting. That is, the Proxies did not in any way concern—lot alone authorize—the implementation of Michaels' internal controls or the sale of the company.

At best, Plaintiffs allege that the Proxies misled Michaels shareholders into electing directors who took allegedly improper actions, but such allegations are insufficient to state a Proxy Fraud Claim. *See In re Affiliated Computer Servs. Derivative Litig.*, 540 F.Supp.2d 695, 704 (N.D.Tex.2007) (" '[T]he mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss.' " (quoting *Cathcart*, 980 F.2d at 933)); *In re Browning–Ferris Indus., Inc.*, 830 F.Supp. at 370 (" 'The cases uniformly hold that a claim seeking relief for injuries occasioned by mismanagement or breach of fiduciary duty is not redressable under the proxy rules simply by virtue of the fact that acts were committed by directors who would not have been elected but for the

---

4. Although Plaintiffs vaguely hint at times that these backdating practices continued into 2001 and beyond, *see, e.g.,* Pl.'s Compl. ¶ 47 ("[Backdating] applied to the overwhelming majority of stock option grants made between 1990 and the end of the Relevant Period [i.e., the present]"), Plaintiffs pleadings are utterly devoid of any particularized allegations to that effect. To the extent that Plaintiffs even plead ongoing backdating, the Court is unable to discern *any* facts upon which Plaintiffs might have formed a belief that Michaels granted backdated shares after 2000. Accordingly, any allegations concerning backdating post–2000 fail to meet the pleading standard set by the Private Securities Litigation Reform Act ("PSLRA") and therefore cannot form the basis for liability under section 14(a). 15 U.S.C. § 78u–4(b)(1) ("the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts upon which that belief is formed"); *see also Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674, 682 (9th Cir.2005) ("[T]he PSLRA pleading requirements apply to claims brought under Section 14(a) and Rule 14a–9."); *Cal. Pub. Employees' Retirement Sys. v. The Chubb Corp.*, 394 F.3d 126, 144–45 (3d Cir.2004) ("While claims brought pursuant to section 14(a) of the 1934 Act do not require that scienter be pleaded, any claims brought under the 1934 Act must meet the PSLRA particularity requirements...."); *Bond Opportunity Fund v. Unilab Corp.*, 87 Fed.Appx. 772, 773 (2d Cir.2004) (applying section 78u–4(b)(1) to a Proxy Fraud Claim).

proxy solicitation.'" (quoting *In re Commonwealth Oil/Tesoro Petroleum Corp.,* 467 F.Supp. 227, 237 (W.D.Tex.1979))). Accordingly, the Court dismisses all of Plaintiffs' Proxy Fraud Claims for failure to state a claim.

## IV. PLAINTIFFS' SECTION 20(A) CLAIM FAILS BECAUSE PLAINTIFFS CANNOT STATE A CLAIM FOR ANY UNDERLYING SECURITIES VIOLATION

Finally, because the Court has already dismissed all of Plaintiffs' Proxy Fraud Claims, the Court further dismisses Plaintiffs' section 20(a) "control person" claims because no predicate securities fraud violations remain in the case. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 383 (5th Cir.2004) ("Control person liability is secondary only and cannot exist in the absence of a primary violation.").

### CONCLUSION

Accordingly, for the reasons provided above, the Court grants Defendants motion and dismisses all of Plaintiffs' claims.