**In re FOSSIL, INC., Derivative Litigation.**

**This Order Relates To: All Actions.**

**Case No. 06–cv–1672–F.**

United States District Court,
N.D. Texas,
Dallas Division.

May 19, 2010.

Brian J. Robbins, Caroline A. Schnurer, Shane P. Sanders, Steven J. Simerlein, Robbins Umeda LLP, Benny C. Goodman, III, Darren J. Robbins, James I. Jaconette, Mary Lynne Calkins, Robert R. Henssler, Jr., Travis E. Downs, III, Robbins Geller Rudman & Dowd LLP, San Diego, CA, Aelish M. Baig, Maria V. Morris, Monique C. Winkler, Shawn A Williams, Robbins Geller Rudman & Dowd LLP, San Francisco, CA, Cynthia J. Billings, Sullivan Ward Asher & Patton, Southfield, MI, Joe Kendall, Karl A. Rupp, Kendall Law Group LLP, Willie Briscoe, Preston Commons West, Dallas, TX, Jeffrey A. Berens, Dyer & Berens LLP, Kip B. Shuman, Shuman & Berens LLP, Denver, CO, for Plaintiff.

Terence J. Hart, Bracewell & Giuliani LLP, Patrick K. Craine, Financial Regulatory Authority, Andrew W. Yung, John B. Scott, Scott Yung, E. Lawrence Vincent, Law Office of Joe H. Staley PC, Dallas, TX, for Defendant.

Geoffrey S. Harper, Andrew R. Graben, Scott Cashion Thomas, Steven H. Stodghill, Fish & Richardson, Dallas, TX, for Plaintiff and Defendant.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

ROYAL FURGESON, Senior District Judge.

Before the Court is Defendants' Motion to Dismiss Second Amended Consolidated Verified Shareholder Derivative Complaint (Docket No. 157), filed on December 9, 2009. A hearing in this matter was held on January 19, 2010. Having considered the oral argument, the filings and record, and applicable law the Court DENIES Defendants' Motion to Dismiss (Docket No. 157).

## I. Background

### A. Procedural Background

The original Verified Shareholder Derivative Complaint in this case was filed on September 13, 2006, and assigned to the docket of the Honorable Jorge Solis. A similar complaint was filed October 26, 2006, *Minich v. Kartsotis*, No. 3:06–cv–1977–M (N.D.Tex.), and assigned to the Honorable Barbara M.G. Lynn. In November 2006, Judge Solis considered the question of consolidation and ordered that the cases be consolidated into the above-captioned case. On February 12, 2007, Plaintiffs filed their Consolidated Verified Shareholder Derivative Complaint. *See* Docket no. 26. After obtaining extensions, Defendants filed their first motion to dismiss on April 6, 2007.

On June 29, 2007, Plaintiffs filed their First Amended Consolidated Verified Shareholder Derivative Complaint ("the FAC"). *See* Docket no. 42. On July 6, 2007, certain Defendants moved to dismiss the FAC; the first motion to dismiss was denied as moot on July 30, 2007.[1] In December 2007, the case was transferred to the docket of the Honorable Reed O'Connor. On December 15, 2008, the case was again transferred to the docket of the undersigned.

On July 15, 2009, the Court heard the parties regarding the then-pending motions to dismiss. On July 17, 2009, the Court denied all three motions to dismiss for the reasons stated in open court. Additionally, the Court ordered Plaintiffs to re-plead their Rule 10b–5 and Section 14(a) claims. On October 13, 2009, Plaintiffs filed their Second Amended Consolidated Verified Shareholder Derivative Complaint (the "SAC"). On December 9, 2009, Defendants again moved to dismiss.

---

1. The remaining Defendants moved to dismiss the FAC on August 6 and 23, 2007.

The SAC is the subject pleading of the instant motion.

## B. Second Amended Consolidated Verified Shareholder Derivative Complaint

█ Plaintiffs are shareholders of Fossil, Inc.[2] who have owned stock in the corporation at all times relevant to this action. They derivatively complain that Defendants, who are members of Fossil's Board of Directors or current or former officers or directors, backdated stock option grants to themselves, to other top Fossil executives, and to Fossil employees.[3] Plaintiffs allege that Defendants concealed the "backdating option scheme" or refused to take advantage of Fossil's legal rights to require insiders to disgorge illicitly obtained incentive proceeds since 1996. SAC, at 1.

Plaintiffs set forth facts alleging securities violations and stated eleven enumerated causes of action: violations of sections 14(a), 10(b), and 29(b) of the Securities Exchange Act of 1934, breach of fiduciary duties, corporate waste, gross mismanagement, unjust enrichment, abuse of control, insider selling and misappropriation, rescission, and accounting.

Count One of the SAC, the section 14(a) claim, names Defendants Kercho, K. Kartsotis, T. Kartsotis, Tunnell, Gold, Anderson, Stone, and Steinberg.

Count Two of the SAC, the section 10(b) claim, names Defendants T. Kartsotis, K. Kartsotis, Kercho, Kovar, Tunnell, Barnes, Gold, Anderson, Stone, and Steinberg.

Count Three of the SAC, the section 29(b) claim, names Defendants Barnes,

Kercho, Kovar, Steinberg, Shroff, and Tunnell.

Count Nine, which states violations for insider selling and misappropriate of information, names Defendants T. Kartsotis, K. Kartsotis, Barnes, Kovar, Kercho, Shroff, Gold, Anderson, Stone, and Tunnell. The remaining seven counts are stated against all Defendants.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

█ When alleging fraud, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R.Civ.P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir.1992). "To plead fraud with particularity, a plaintiff must, at a minimum, include the time,

---

**2.** Fossil, Inc. is a Delaware corporation with its principal executive offices located in Richardson, Texas. Fossil designs, develops, markets, and distributes fashion watches and accessories.

**3.** A derivative suit, as here, is "brought on behalf of the corporation, [so] the recovery, if any, must go to the corporation." *Torch Liquidating Trust v. Stockstill,* 561 F.3d 377, 386 (5th Cir.2009) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1036 (Del.2004)).

place, and contents of the false representations, as well as identify the speaker who made the misrepresentation and what that person obtained thereby." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). In other words, a plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir.2005). Further, "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)." *In re Urcarco Sec. Lit.*, 148 F.R.D. 561, 569 (N.D.Tex.1993), aff'd, *Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994).

## III. Analysis

### A. Section 10(b) and 10b–5 Claims

■ As stated above, Plaintiffs allege Section 10(b) violations against certain Defendants.[4] *See, e.g.,* SAC ¶¶ 274–279. In order to state a claim for fraud under Section 10(b) and Rule 10b–5 of the Securities Exchange Act, a plaintiff must allege, in connection with the purchase or sale of securities, (1) a misstatement or an omission (2) of a material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused the plaintiff's injury. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir.2005).

Because Plaintiffs claim securities fraud in violation of Rule 10(b), they must satisfy the heightened pleading requirements of Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir.2009). Rule 9(b) requires a plaintiff to plead fraud with particularity, including specific allegations of the time, place, and content of the misrepresentations, the identity of the persons making the misrepresentations, and what the person who made those misrepresentations gained from making the statements. *Shushany*, 992 F.2d at 521. The PSLRA requires Plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1); *see also Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU*

---

4. Section 10(b) of the Securities Exchange Act provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

SEC Rule 10b–5, promulgated pursuant to Section 10(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact ⁓necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. (The Court refers to claims arising under § 10(b) and Rule 10b–5 as "10(b)" claims or violations for simplicity's sake.)

*Corp.*, 565 F.3d 200, 207 (5th Cir.2009). Defendants attack the sufficiency of the SAC's 10(b) claims with respect to scienter and reliance.

### 1. Scienter

■ Defendants argue that Plaintiffs have failed to adequately allege their 10(b) claims because they have not alleged facts giving rise to a strong inference of scienter. In opposition, Plaintiffs point to the allegation that Defendants approved the backdating options, and argue that allegation is sufficient to demonstrate a strong inference of scienter.

■ Under the PSLRA, the Court considers whether all the facts and circumstances, taken together, give rise to a strong inference of scienter. *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 431 (5th Cir.2002); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 425 (5th Cir.2001). "Scienter, in the context of securities fraud, is defined as 'an intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it.'" *Flaherty & Crumrine*, 565 F.3d at 207 (quoting *R2 Invs.*, 401 F.3d at 643). "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care." *Id.*

■ There is a "three step approach to reviewing scienter allegations on a motion to dismiss a federal securities fraud case pursuant to the PSLRA":

First, the allegations must, as in federal pleadings generally, be taken as true. Second, courts may consider documents incorporated in the complaint by reference and matters subject to judicial notice. The facts must be evaluated collectively, not in isolation, to determine whether a strong inference of scienter has been pled. Third, a court must take into account plausible inferences opposing as well as supporting a strong inference of scienter. The inference of scienter must ultimately be "cogent and compelling," not merely "reasonable" or "permissible."

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 533 (5th Cir.2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)). In addition, "omissions and ambiguities count against inferring scienter, for plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs*, 551 U.S. at 326, 127 S.Ct. 2499 (citation omitted).

■ Although allegations of motive and opportunity standing alone will not suffice to meet the scienter requirement, allegations of motive and opportunity may meaningfully enhance the strength of the inference of scienter. *Ind. Elec.*, 537 F.3d at 533 (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 368 (5th Cir.2004)). The Court will reject the group pleading approach to scienter and instead look to the state of mind of the individual corporate official or officials "who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment." *Id.*

Defendants argue that Plaintiffs merely allege that the Defendants "participated in" the option grant process and that this does not meet the scienter requirement. Defendants argue Plaintiffs attempt to establish scienter by pointing to the findings

of the Special Committee that investigated Fossil's equity granting practices but they fail to establish how the investigation demonstrates the requisite scienter of any individual Defendant. Defendants characterize the SAC as attempting to bootstrap their scienter allegations to claims of insider trading fail because Plaintiffs make no allegation of Defendants' previous trading activity and do not offer a single allegation explaining why the trading was suspicious. Defendants argue that Plaintiffs' merely compound inference upon inference that Defendants were in possession of unspecified insider information from an unspecified source, were granted options, exercised those options, and received proceeds from those sales, and therefore, must have been engaging in insider trading sufficient to raise an inference of scienter. Finally, Defendants argue that Plaintiffs' attempt to allege scienter based on an alleged pattern of stock option grants over the past decade by creating a graph that purports to demonstrate the cumulative change in Fossil's stock price 20 trading days before and after all reported discretionary option dates is manipulated and out of context.

The SAC sets forth Plaintiffs' allegations in specific and particularized detail as to each individually named defendant. Plaintiffs generally allege that the group of Defendants participated in or approved the backdating of options to the Defendants' unjust enrichment and to the detriment of Fossil. Were this the only allegation, then Defendants' motion to dismiss would prevail. Plaintiffs' SAC, however, is not so generalized throughout. Plaintiffs allege that certain Defendants knew of the backdating of options and false and inflated reports of earnings and sold either millions or hundreds of thousands of shares of Fossil stock, depending on the individual, without disclosing the materially adverse information. Specific to each Defendant, the SAC alleges the approval or acceptance of backdated options, participation in

or responsibility for compensation and options as a committee member, oversight of the Company's internal controls, and approval of false financial statements. The SAC also suggests motive, which bolsters an inference of scienter.

The Court does not find persuasive Defendants' specific challenges to the allegations against Shroff, Tunnell, and Kercho. The SAC sufficiently alleges scienter as to these individual Defendants. The SAC describes in detail, with respect to each individual, sufficient factual information that this Court finds a strong inference of scienter with respect to each individual Defendant because the inference of scienter is cogent and at least as compelling as any opposing inference of nonfraudulent intent. *See Lormand,* 565 F.3d at 252 (quoting *Tellabs,* 551 U.S. at 323–24, 127 S.Ct. 2499) Considering all of Plaintiffs' allegations cumulatively as the Court must, *Goldstein v. MCI WorldCom,* 340 F.3d 238, 247 (5th Cir.2003), the Court concludes Plaintiffs sufficiently pleaded scienter.

### 2. Reliance

■ Defendants argue that Plaintiffs cannot sufficiently plead the reliance element of the 10(b) and 10b–5 claims. Plaintiffs allege that "Fossil would not have purchased its common stock at the prices it paid had the market previously been aware that the market price of Fossil's stock was falsely inflated by defendants' misleading statements." SAC ¶ 379. Defendants argue that this reliance allegation of reliance is impossible because Plaintiffs "allege that the individuals making the repurchase decisions knew of, and were responsible for the, alleged issuance of misleading financial statements." Plaintiffs counter that because "the Company provided the shares [underlying the options] in exchange for the artificially low

prices set by Defendants, it relied on false statements regarding their value and compliance with the plans."

Defendants rely in part on a Northern District of California case with similar facts. *See In re Verisign, Inc., Derivative Litigation,* 531 F.Supp.2d 1173, 1209 (N.D.Cal.2007). There, the court concluded that plaintiffs failed to sufficiently plead reliance and wrote:

> Plaintiffs allege that [the company would not have purchased its common stock at the prices paid had the market known that the market price of the stock was] falsely inflated by defendants' misleading statements." However, the [pleading] does not identify a single Verisign officer or director who relied on the supposedly false or misleading financial statements in deciding to undertake the stock repurchase on Verisign's behalf. Plaintiffs might be able to plead reliance if they were to allege that the corporate decision-maker for the repurchase of shares had no knowledge of the alleged fraud. Here, however, plaintiffs allege that all the senior management and board members not only knew about the alleged backdating but also caused it, and that all the director defendants and Evan intentionally caused Verisign to release financial statements that omitted to disclose the alleged backdating.

*Id.*

In response, Plaintiffs argue that courts have historically rejected the notion that the directors and company are identical in the face of securities fraud allegations. *See Goldberg v. Meridor,* 567 F.2d 209, 215 (2d Cir.1977). "If ... the board defrauded the corporation into issuing shares either to its members or others, we can think of no reason to say that redress under Rule 10B–5 is precluded, though it would have been available had anyone else committed the fraud." *Id.* (quoting *Ruckle v. Roto*

*American Corp.,* 339 F.2d 24, 29 (2d Cir. 1964)).

The Court is not persuaded by the analysis of *Verisign;* nor is the authority for *Verisign's analysis, Atari Corp. v. Ernst & Whinney,* 981 F.2d 1025 (9th Cir.1992), binding or persuasive here. Verisign addressed arguments similar to those advanced by Plaintiffs here—attribution of the individual defendants' alleged wrongdoing to the company is a legal fiction which permits an entity's directors and officers to collude in wrongdoing, mislead the company, and then escape derivative liability because they colluded in the misleading and succeeding in misleading the company. *See Verisign,* 531 F.Supp.2d at 1209. The district court in the Northern District of California dismissed this argument on the basis of a Ninth Circuit panel opinion's statement that "[i]f the investor already possess information sufficient to call the representations into question, he cannot claim later that he relied on or was deceived by the lie." *Atari,* 981 F.2d at 1030.

The key distinction between the statement in *Atari* and the allegations in this case and *Verisign* is that Plaintiffs here allege that certain directors and officers misled the company, and Plaintiffs bring their claim derivatively on the company's behalf. This Court agrees, in part, with the rationale of the *Verisign* court—a plaintiff could not state a claim against an individual person for fraud and claim that individual person relied upon the alleged misstatement. Defendants here, and the court in *Verisign,* extended too far the legal fiction that the company is the same as its leadership. Plaintiffs here have alleged, and this Court concludes sufficiently so, that the company relied upon the individual Defendants' alleged misstatements to the company's detriment. This allegation is permissible as part of a 10(b) claim.

This Court declines to hold that in order to sufficiently plead reliance a derivative plaintiff must allege that some directors or officers acted with the alleged scienter and material misrepresentations but that some did not and that the company's justifiable reliance on its Board exists only because of those who did not take part in the alleged fraud. *Cf. Verisign,* 531 F.Supp.2d at 1209.

■■■ This conclusion comports with the Supreme Court's explanation for pleading loss causation in securities fraud cases. *See Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). "[T]he federal laws require 'that a plaintiff prove that the defendant's misrepresentations (or other fraudulent conduct) proximately caused the plaintiff's economic loss.'" *Lormand,* 565 F.3d at 255 (quoting *Dura,* 544 U.S. at 346, 125 S.Ct. 1627). Plaintiffs have sufficiently pleaded a facially plausible 10(b) claim, including the elements of scienter and reliance.

## B. Section 29(b) Claim

■■■ Defendants challenge Count Three, the section 29(b) claim. SAC ¶¶ 280–82.[5] Defendants argue that Plaintiffs failed to allege which contracts should be rescinded, the contents of those contracts, or why any contracts should be rescinded given that Plaintiffs fail to allege facts sufficient to demonstrate that the performance of the two remaining option contracts violated section 10(b), Defendants cite no authority in support of their argument. Irrespective, the Court finds that the SAC adequately incorporates identification of the option contracts that are either allegedly void or allegedly must be rescinded under section 29(b). SAC ¶ 281 (naming the "backdated options contracts identified herein"); *see also id.* ¶¶ 56–72. The Court denies Defendants' motion to dismiss Count Three.

## C. Section 14(a) Claims

■■■ Defendants seek dismissal of Plaintiffs section 14(a) claim, Count One of the SAC, because they argue that it fails to meet the strict pleading requirements of the PSLRA. Section 14(a) prohibits false statements in proxy solicitations associated with registered securities. *See* 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a–9. Plaintiffs state Count One against Defendants Kercho, K. Kartsotis, T. Kartsotis, Tunnell, Gold, Anderson, Stone, and Steinberg. SAC, Count One, ¶ 266.

■■■ To state a claim under § 14(a), a plaintiff must allege that "the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Mills v. Elec. Auto–Lite Co.,* 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *see also Shaev v. Saper,* 320 F.3d 373, 379 (3d Cir.2003). Stated another way, a plaintiff must allege "that (1) defendants misrepresented or omitted a material fact in a proxy statement ...; (2) defendants acted *at least* negligently in distributing the proxy statement ...; and (3) the false or misleading proxy statement was an essential link in causing the [loss-generating] corporate actions." *Hulliung v. Bolen,* 548 F.Supp.2d 336, 339 (N.D.Tex. 2008) (emphasis added) (quoting *In re Browning–Ferris Indus., Inc., S'holder*

---

5. The relevant portion of section 29(b) states:
   Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void.
   15 U.S.C. 78cc(b).

*Derivative Litig.*, 830 F.Supp. 361, 365 (S.D.Tex.1993)). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

Plaintiffs' section 14(a) claims are based on the theory that Fossil's proxy statements omitted the material fact "that certain of the defendants were causing Fossil to engage in backdating options and were receiving backdated options." SAC ¶ 286. According to Defendants, Plaintiffs' SAC contains no facts that create a strong inference that any Defendant acted with negligence in connection with the filing of any of the proxy statements. But Defendants focus too narrowly upon negligence. The SAC alleges that the individuals knowingly turned a blind eye on the relevant conduct. In addition, Plaintiffs alleged that each individual Defendant "(1) signed and approved proxies falsely representing options were granted in accordance with shareholder-approved option plans and options were priced based on fair market value on the date of grant (among other misrepresentations); and (2) was negligent in not knowing the true omitted material facts, for each such defendant previously approved the granting of millions of alleged backdated options and/or received hundreds of thousands of alleged backdated options." *See* SAC ¶¶ 68–84, 112, 115, 118, 121, 124, 128, 132, 136, 140, 144. Moreover, Plaintiffs allege that some Defendants additionally were negligent in failing to disclose the backdating notwithstanding their duty to be aware of such and their representations that they had complied with duties and internal controls. *See id.* ¶¶ 19–21, 24–26, 36–37, 40–41, 44–45, 48–49, 51–52, 68–84, 126, 130, 134, 138, 142, 146, 154–57. Having reviewed the entirety of Plaintiffs' SAC, the Court concludes that Plaintiffs sufficiently stated facts supporting a strong inference of the relevant Defendants' negligence, at a minimum, in connection with the filing of the proxy statements.

Defendants also argue that Plaintiffs have failed to state a specific injury to Fossil because instead Plaintiffs only allege that "misrepresentations and omissions in the proxy statements were material to plaintiffs and would be material to reasonable investors who voted on each proxy statement." Defendants argue that this allegation fails to show that the proxy resulted in any injury to Fossil. Plaintiffs argue that the actions of the defendants were the proximate cause of the backdating, and "the harm that befell Fossil from its directors would not have occurred but for the directors' ability to maintain their positions on the Board by false and misleading proxies." Plaintiffs argue that but for the false proxy statements, the backdating conduct and misrepresentations would have been discovered and stopped, thereby preventing harm to Fossil. Plaintiffs also argue that the election of the directors by the false proxies is an essential link to the harm caused to Fossil. Although Plaintiffs may not ultimately be able to prove this allegation, it is sufficiently stated for purposes of surviving Defendants' Rule 12(b)(6) motion. The Court concludes that Plaintiffs adequately pleaded Count One, the section 14(a) claim against certain Defendants.

### D. Insider Trading Claims

Defendants next challenge the sufficiency of Plaintiffs' allegations of insider trading. The parties agree that Delaware law governs this claim. Under Delaware case law, to establish a claim for insider trading or *Brophy* claim, a plaintiff "must show that: 1) the corporate fiduciary possessed material, nonpublic company information; and 2) the corporate fiduciary

used that information improperly by making trades because she was motivated, in whole or in part, by the substance of that information." *In re Oracle Corp. Derivative Litig.*, 867 A.2d 904, 934 (Del.Ch.2004). These "elements ... more or less track the key requirements to recover against an insider under federal law." *Id.*

Defendants argue that Plaintiffs have not plead with particularity allegations of scienter as to each individual alleged to have traded stock on insider information. Defendants argue that Plaintiffs' chart that spans the course of nine years and numerous transactions per defendant do not discuss why any of these transactions were improper. *See* SAC ¶ 239. Defendants complain that the SAC fails to allege that any of these stock sales occurred at suspicious times, were in suspicious amounts, were out of line with any defendant's prior trading practices, or were made at a time calculated to maximize gain. *See Southland Securities*, 365 F.3d 353. Plaintiffs also allege, however, that individual Defendants (T. and K. Kartsotis, Barnes, Kovar, Kercho, Shroff, Gold, Anderson, Stone and Tunnell) "knew [at the time of the alleged stock sales] that the Company's financial results were false and misleading" and that the sales of those stocks with such materially adverse and non-public information constitutes insider trading. SAC ¶¶ 308–311. Taken together, the allegations of the SAC sufficiently state a claim for insider trading, even if ultimately Plaintiffs are unable to prove those allegations.

### E. State Law Tort Claims

Defendants argue that several of Plaintiffs' state law tort claims are time-barred and Plaintiffs' attempt to rely on fraudulent concealment to preserve the timeliness of claims has been inadequately pleaded. Defendants argue that all alleged breaches of fiduciary duty related to equity grants prior to September 13, 2002, should be dismissed under Delaware's three-year statute of limitations, and that all such claims are time-barred even if Texas's four-year statute applies.

Defendants argue Plaintiffs have failed to adequately plead fraudulent concealment because they failed to plead with particularity the circumstances surrounding the concealment and state facts showing their due diligence in trying to uncover facts. *See, e.g., S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex.1996). Moreover, according to Defendants, Plaintiffs should have known of the allegedly suspicious grants on the date they were publically available, that is, September 13, 2006. Plaintiffs counter that this Court previously denied Defendants' timeliness challenge in its Order on the prior motion to dismiss. The Court did previously reject Defendants' motion to dismiss based on a time-bar. Although Defendants were not precluded from reraising the issue here by any statement by this Court, the Court concludes that fact questions preclude dismissal on the basis of a time-bar as to any state law claim. The SAC adequately pleads the operation of tolling based on fraudulent concealment and Plaintiffs' due diligence. The timeliness of Plaintiffs' state law claims is an issue that may be resolved on a motion for summary judgment, but the Court cannot conclude at this stage that Plaintiffs did not know of or could not have known of the alleged wrongful conduct in the exercise of due diligence earlier than alleged. *See Margolies v. Deason*, 464 F.3d 547, 554–55 (5th Cir.2006).

### IV. Conclusion

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss.

### V. Order

As previously discussed at the June 2009 hearing, the Court will now order the parties to submit proposals regarding discov-

ery. The Court accordingly ORDERS that:

(1) On or before **June 11, 2010,** the parties will meet and confer (telephonic conference is acceptable) to discuss discovery and whether further mediation will prove fruitful.

(2) In the event that the parties desire to pursue mediation, the parties will jointly select a mediator and jointly submit, on or before **June 18, 2010,** a proposed order regarding mediation. In this event, mediation shall occur on or before **August 15, 2010.**

(3) In the event that the parties do not agree on mediation or desire to pursue mediation, the parties shall jointly submit a proposed scheduling order on or before **June 18, 2010.** The parties are encouraged to agree upon a schedule. In the event that agreement cannot be reached, each party shall set forth its proposed date, and the Court will select a date or deadline accordingly.